810 A.2d 1169 (2002)
355 N.J. Super. 579
STATE of New Jersey, Plaintiff-Appellant,
v.
Roy WILLIAMS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 2002.
Decided December 11, 2002.
*1170 Mary R. Juliano, Assistant Prosecutor, argued the cause for appellant (John Kaye, Monmouth County Prosecutor, attorney; Ms. Juliano, of counsel and on the brief).
Brian J. Neary argued the cause for respondent.
Before Judges WEFING, WECKER and BILDER.
The opinion of the court was delivered by WECKER, J.A.D.
This appeal concerns N.J.S.A. 2C:51-2, the provision of the Criminal Code that requires a public employee or office holder who is convicted of certain offenses to forfeit the public position and, if the conviction is for an offense "involving or touching" that position, bars that person from holding any future public position.
N.J.S.A. 2C:51-2 provides, in pertinent part:
a. A person holding any public office, position, or employment, elective or appointive, under the government of this State or any agency or political subdivision thereof, who is convicted of an offense shall forfeit such office or position if:
(1) He is convicted under the laws of this State of an offense involving dishonesty or of a crime of the third degree or above or under the laws of another state or of the United States of an offense or a crime which, if committed in this State, would be such an offense or crime;
(2) He is convicted of an offense involving or touching such office, position or employment; ....
d. In addition to the punishment prescribed for the offense, and the forfeiture set forth in subsection a. of N.J.S. 2C:51-2, any person convicted of an offense involving or touching on his public office, position or employment shall be forever disqualified from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions.
[emphasis added.]
Thus a public employee or office holder who is convicted of any first, second, or third degree offense, or an offense that involves dishonesty, forfeits his or her position. N.J.S.A. 2C:51-2a(1) (hereinafter also referred to as "section a(1)"). Forfeiture also is mandated upon conviction for a lesser offense if the underlying conduct involves or touches the public office. N.J.S.A. 2C:51-2a(2) (hereinafter also referred to as "section a(2)"). When the conduct that forms the basis for a conviction at any level involves or touches the individual's public office, that individual is also disqualified from all future public office. N.J.S.A. 2C:51-2d (hereinafter also referred to as "section d").
Defendant, Roy Williams, was originally convicted of second degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a. He was also convicted of fourth degree aggravated assault by pointing a gun in the direction of another under circumstances manifesting extreme indifference to human life. N.J.S.A. 2C:12-1b(4). At the time of the events upon which these convictions were based, Williams was an off-duty police officer employed by the City of Bayonne. As a result of his conviction for the second degree offense, and in addition to concurrent state prison terms imposed for the two offenses, the *1171 Law Division judge ordered Williams' employment forfeit and his right to future public employment barred.
On appeal, the Supreme Court reversed his second degree conviction. State v. Williams, 168 N.J. 323, 774 A.2d 457 (2001). The State elected not to retry Williams for that offense. Williams therefore remained convicted only on the fourth degree offense, and section a(1) therefore no longer applied. Williams moved for an order restoring his employment as a Bayonne police officer. The State opposed, arguing that his right to public employment was nevertheless forfeit pursuant to section a(2), because he was convicted of an offense "involving or touching" his employment.
The motion judge granted defendant's motion, relying substantially on McCann v. Clerk of City of Jersey City, 167 N.J. 311, 771 A.2d 1123 (2001). In a written decision, the judge concluded that because defendant was off duty at the time of the offense, on sick leave, "miles away from Bayonne," and "in his own vehicle with his wife and child," the fact that he used his service revolver and that he identified himself as a police officer did not "alone ... establish the requisite direct link to his public office as envisioned in McCann." The judge concluded that "the assault committed by defendant was not directly related to his performance as a police officer. Further, the circumstances under which the offense took place did not flow from his public office." We disagree and therefore reverse.
The operative language of the order appealed from provided "that the forfeiture provision of N.J.S.A. 2C:51-2a(2) does not apply ...." The judge's written opinion also recognized that "[i]f the requisite relationship [between defendant's position and the criminal conduct] is found, defendant would be forever barred from holding any public position in the state [pursuant to] N.J.S.A. 2C:51-2d." The State's single point heading states: "because defendant was convicted of a crime that `involved or touched' his public office, ... his employment as a police officer is therefore subject to mandatory forfeiture under N.J.S.A. 2C:51-2a(2)." The State argues (under the same point heading) that defendant also must be barred from future public employment pursuant to section d. In light of the motion judge's reliance upon McCann, a section d case, and the Supreme Court's own description of the "involve or touch" language of section d as duplicating that of section a(2), McCann, 167 N.J. at 321, 771 A.2d 1123, our decision necessarily addresses the applicability of both the forfeiture and future disqualification provisions of the Code to Williams' circumstances.
These are the facts revealed by the evidence in the criminal trial, as set forth in the Supreme Court's opinion reversing his second-degree conviction:
At the time of the accident, Mrs. Williams was driving because Williams, who had been injured on the job a week earlier, was taking pain medication and was unable to drive. According to the Williamses, their mini-van was rear-ended by Erickson while stopped at a traffic light. When Erickson failed to pull over to exchange insurance information, Mrs. Williams pursued the fleeing vehicle, sounding her horn and flashing her headlights. At one point during the chase, [both Mr. and Mrs.] Williams lost sight of Erickson's vehicle, but shortly after spotted it and attempted to block the roadway to prevent Erickson's escape.
What occurred next was the subject of much dispute at trial. The defense theory, as developed through the testimony of the Williamses, was that after stopping the van in the roadway Mrs. Williams proceeded to get out. Williams also exited the van with badge in hand *1172 identifying himself as a police officer. According to their testimony, it was at that point that Erickson's vehicle, traveling at a high rate of speed, headed straight toward the side of the van where Mrs. Williams was standing. Mrs. Williams testified that she yelled for her husband and, as she was jumping out of the way of Erickson's vehicle, she hit the door on the back side of the van. When Williams observed Erickson's vehicle headed in the direction of his wife, he dropped his badge and reached for his service revolver, which he legally carried "in a gunnysack" attached to his waist. Williams claimed that he fired one round in the direction of Erickson's passing vehicle after hearing his wife's screams because he believed she was in imminent danger of being hit.
Williams testified that he fired his gun as Erickson's car passed him, within a "split second" of hearing his wife scream his name. In response to the question from the assistant prosecutor, "What were you aiming at?" Williams answered: "I just fired, sir." When asked whether he wanted to fire a shot at the person who might have just run over his wife, Williams said: "I just fired at the car in defense of my wife, sir." In response to repeated questions with respect to the order of events surrounding the firing, Williams answered "My wife screamed and I fired in response to that." "I fired in response to my wife's screams, sir." "In my mind, my wife's life was in danger." "I fired because Sandy was in imminent danger of being struck by that vehicle." "I fired in response to my wife screaming and the car was passing." The bullet hit the rear windshield of Erickson's vehicle and exited through the front windshield without striking Erickson.
Erickson's version of the events leading up to the shooting was in stark contrast. She denied having been involved in any collision with the Williams' car on June 22, 1995, inferentially suggesting that she had been the victim of an unprovoked attack by Williams. She testified that while driving to work she observed a van stopped in a "weird spot" in the roadway. She then saw a man next to the van pointing a gun in her direction, at which time she hit the accelerator and turned the corner. The bullet struck her windshield. Erickson testified that the woman in the Williams' van did not get out. Erickson telephoned police upon reaching the diner where she was employed as a waitress.
[168 N.J. at 330-31, 774 A.2d 457.]
There is no dispute that defendant showed his police badge and used his service revolver in the incident that formed the basis for his aggravated assault conviction. Nevertheless, the judge found that these circumstances "were ancillary to the conduct of the defendant who was neither acting as a police officer nor performing an act as a consequence of his public office." The judge described defendant as "a private citizen who exercised extremely poor judgment under circumstances where his status as a police officer was irrelevant to his conduct."
By displaying his police badge to Erickson and thus identifying himself as a police officer, Williams invoked the power vested in him as an officer of the law. N.J.S.A. 2C:29-2b. Moreover, by displaying and pointing his service revolver, defendant was acting under the exemption provided by N.J.S.A. 2C:39-6a(7)(a), which allows off-duty police officers to carry a handgun without obtaining the permit otherwise required by N.J.S.A. 2C:39-5b. In other words, Williams was lawfully carrying the weapon, whose unlawful use constituted a fourth-degree aggravated assault, only by virtue of his employment as a *1173 police officer. We conclude that defendant's conduct thus directly involved and touched upon his employment, as contemplated both by section a(2) and section d of the forfeiture statute.[1]
The motion judge's reliance upon McCann is misplaced. This case is far closer to the circumstances that led the Supreme Court to uphold a forfeiture of public employment in Moore v. Youth Correctional Institute, 119 N.J. 256, 574 A.2d 983 (1990). We see no inconsistency between Moore and McCann. In each case, the Court analyzed the "involve and touch" standard in the context of the circumstances at hand and addressed the relationship between the specific criminal conduct and the public position in question.
In Moore, a corrections officer was convicted of a petty disorderly persons offense as a result of conduct while he was off duty. The defendant used foul language and made threats to his supervisor over the telephone; he also raced his car engine in front of the supervisor's house, then took off at high speed, all apparently in retaliation for discipline he had received for his role in another officer's conduct (marching outside the inmates' quarters dressed as a Ku Klux Klan member). In the case of a petty disorderly persons offense, the Code permits the State to waive the statutory forfeiture of public employment. N.J.S.A. 2C:51-2e. In Moore's case, the State refused to waive the otherwise mandatory forfeiture, and the Court upheld that refusal, explaining:
The inquiry into whether an offense involves and touches on employment to the extent of meriting forfeiture requires careful examination of the facts and the evaluation of various factors in the "involve and touch" analysis. First, there is a need to assess the gravity of the crime as revealed by its nature, its context, and the identity of the victim. Second, there is a need to assess the qualifications required of the employee's public employment.
At the outset we reject Moore's contention that if the offense does not take place during employment hours or on employment grounds, it does not involve or touch employment. New Jersey cases have generally adhered to the involve and touch analysis outlined above and have applied it regardless of whether the employee committed the offense on the job premises or during work hours.

[119 N.J. at 269, 574 A.2d 983.]
The facts in McCann were different in several respects. McCann had been the Mayor of Jersey City from 1982 to 1986 and was again elected in 1990. During his second term, he was convicted on fifteen counts of a federal indictment, including mail fraud, wire fraud, false statements to a bank and to the Internal Revenue Service, income tax evasion and failure to file a tax return. Those offenses being the equivalent of "a crime of the third degree or above," McCann forfeited the office pursuant to section a(1). Following thirty-three months in prison and a three-year period of supervised release, McCann sought to run once again for Mayor. The Clerk of Jersey City refused to process McCann's candidacy on two grounds, one of which was that McCann's conviction precluded him from seeking re-election under N.J.S.A. 2C:51-2d. Id. at 317, 770 A.2d 723.
In McCann, the analysis of the "involving or touching" language arose only in the context of section d, McCann's right after conviction once again to seek elective *1174 public office; no forfeiture of a current office was at stake. While the Court concluded that McCann's conduct in handling private financial and tax transactions "involve[d] dishonesty," which affected his qualification for office and justified his removal from the office he had held when he was convicted, the Court declined to disqualify him from all future public office under the Code's forfeiture provision.[2]Id. at 323-24, 770 A.2d 723. Thus it is apparent that a crime of dishonesty which automatically requires forfeiture under section a(1) does not necessarily bar all future public office; that sanction applies only if the conduct involved or touched the forfeited public position. The Court held that forfeiture under the Code required a "direct relationship" between the gravity of the crime and the qualifications required for public employment, id. at 321, 770 A.2d 723, and the record revealed no such relationship. Id. at 322, 770 A.2d 723.
The McCann decision dramatically illustrates that fitness for public office is not the sole basis upon which the forfeiture statute is to be applied. Id. at 322, 770 A.2d 723. While McCann was assumed to have been a private citizen when the alleged violations took place,[3] whereas Moore was still employed as a corrections officer, we do not see that difference as a critical distinction between the cases. Rather, in each case it was the nature of the criminal conduct and the relationship between that conduct and the public office that controlled the outcome. In McCann, the Court declined to apply the Code's forfeiture statute to bar future public office because the convictions arose out of purely private conduct, however dishonest. Id. at 322-23, 770 A.2d 723.
In McCann, where the court modified our decision and held that section d did not bar McCann from all subsequent public employment,[4] Justice Stein wrote for the majority: "The Appellate Division relied heavily on Moore ... but we find that case distinguishable." 167 N.J. at 322, 771 A.2d 1123. In Moore, the Court undertook this analysis of the involve-and-touch standard: first, the gravity and nature of the crime; second, the qualifications of the public employment at issue; and finally, the relationship between the two. Moore, 119 N.J. at 271, 574 A.2d 983. In McCann the Court further described that relationship, emphasizing that in order to constitute conduct that involves and touches public employment to invoke both sections a(2) and d, a convicted public officer's conduct must have had a "direct" relationship with the office that was forfeit. 167 N.J. at 320, 771 A.2d 1123.[5]
Another panel of this court recently affirmed the forfeiture of a police officer's *1175 employment after his conviction of a petty disorderly persons harassment offense committed while he was off duty, relying substantially upon Moore in upholding the forfeiture. State v. Gismondi, 353 N.J.Super. 178, 801 A.2d 1178 (App.Div. 2002). The opinion in Gismondi referred to McCann as setting a "more stringent standard" by requiring a "direct and substantial relationship" between the criminal offense and the public position before holding that the conduct involved or touched the office. Id. at 189, 801 A.2d 1178. The panel nevertheless concluded that even under such a definition, a police officer who is sworn to uphold the law and then participates "in an abuse of authority" has demonstrated more than bad judgment. Ibid. As in Gismondi, we are convinced that Williams' conduct demonstrated more than the poor judgment of a private citizen, and "bore a direct and substantial relationship to [his] public position as a policeman ...." Ibid.
It is plainly not determinative, for purposes of avoiding the consequences of section a(2) or section d of the forfeiture statute, that an offense was committed while the public employee was off duty, and it would be a misreading of McCann so to conclude. E.g., Moore, 119 N.J. 256, 574 A.2d 983; Gismondi, 353 N.J.Super. 178, 801 A.2d 1178.
In our view, the Court in McCann simply elucidated, without narrowing, the definition of conduct that involves or touches upon a public position; it is conduct that bears "some direct relationship" to the office. Id. at 320, 770 A.2d 723.
The language of N.J.S.A. 2C:51-2d, considered in the context of the entire statute, suggests that a conviction does not "involve[]" or "touch [] upon" a public office unless the facts underlying the conviction bear some direct relationship to an office held by the individual.
[emphasis added.]
Contrariwise,
When an individual commits a crime wholly unrelated to his or her public office, the crime ordinarily cannot be characterized as involving or touching on the public office.

[Id. at 321, 770 A.2d 723.]
We conclude that defendant must forfeit his employment as a police officer under section a(2) of the statute, as well as his right to future public employment under section d because his criminal conduct bore a direct relationship to his job and thus involved or touched his position as a police officer.[6]
Reversed and remanded for entry of an order of forfeiture consistent with this opinion.
NOTES
[1] We deem it irrelevant that defendant was not charged with official misconduct, N.J.S.A. 2C:30-2a.
[2] The Court held McCann's candidacy barred under the disqualification provision of the Optional Municipal Charter Law ("the Faulkner Act"), N.J.S.A. 40:69A-1 to -210, specifically, N.J.S.A. 40:69A-166. McCann, 167 N.J. at 324, 771 A.2d 1123.
[3] Because the Court concluded that McCann was barred from seeking elective office under the Faulkner Act, it was willing to assume, as McCann alleged, that McCann's convictions arose entirely out of acts that took place between his two terms as mayor and not while he held public office. 167 N.J. at 316 n. 1, 324 n. 2, 771 A.2d 1123. The Court found the State's contention that two of defendant's convictions were for acts committed during his second term "not critical to the outcome" of the case. Ibid.
[4] We had held that McCann's candidacy was barred both by N.J.S.A. 2C:51-2d and N.J.S.A. 40:69a-166. McCann v. Clerk of the City of Jersey City, 338 N.J.Super. 509, 770 A.2d 723 (App.Div.2001).
[5] Unlike McCann, where the prior forfeiture of office pursuant to section a(1) was not in dispute, 338 N.J.Super. at 514, 770 A.2d 723, we address here a present order of forfeiture on grounds that would also invoke a prospective debarment.
[6] Nothing in the Supreme Court's recent decision in Flagg v. Essex County Prosecutor, 171 N.J. 561, 796 A.2d 182 (2002), suggests a different standard, or a different result from the one we reach here.