971 A.2d 1102 (2009)
407 N.J. Super. 489
STATE of New Jersey, Plaintiff-Respondent,
v.
Jeremiah HUPKA, Defendant-Appellant.
No. A-4882-07T4.
Superior Court of New Jersey, Appellate Division.
Argued March 11, 2009.
Decided June 12, 2009.
*1104 Darren M. Gelber, Woodbridge, argued the cause for appellant (Wilentz, Goldman & Spitzer, P.A., attorneys; Mr. Gelber and Ellen Torregrossa-O'Connor, on the brief).
Charles M. Ouslander, First Assistant Prosecutor, argued the cause for respondent (J. Patrick Barnes, Hunterdon County Prosecutor, attorney; Bennett A. Barlyn, Assistant Prosecutor, on the brief).
Before Judges Parrillo, LIHOTZ and MESSANO.
The opinion of the court was delivered by MESSANO, J.A.D.
Defendant Jeremiah Hupka appeals from the May 2, 2008 order that "disqualified [him] from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions, pursuant to N.J.S.A. 2C:51-2(d)." Defendant contends that his conviction of fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b), involved an offense that did not "touch upon" the public offices he held. The State contends that under the totality of the circumstances, the offense "touched upon" defendant's offices, and the judge therefore properly banned defendant from all future public employment.
We have considered the arguments raised in light of the record and applicable legal principles. We reverse.

I.

A.
Defendant was originally indicted by the Hunterdon County grand jury and charged with first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(7); and second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1). When initially charged, defendant was employed as an officer in the Hunterdon County Sheriff's Office, and a part-time police officer in Frenchtown. On January 17, 2008, pursuant to a plea agreement reached with the State, defendant, who was twenty-eight years old, pled guilty to an amended charge of criminal sexual contact with a sentencing recommendation of two years probation. The State agreed not to object to an earlier release from probation, after one year, if defendant "fulfill[ed] all of his obligations." *1105 In addition, defendant agreed to resign from "law enforcement employment[,] effective as of the date of his suspension[,]" and further "agree[d] not to seek any employment in law enforcement in this or any other state in the future." Defendant consented to the entry of an order to that effect.[1]
Because the plea was to fourth-degree sexual contact and did not involve a minor victim, the provisions of Megan's Law, N.J.S.A. 2C:7-1 to -21, were not implicated. Defendant and the State agreed that "the ... decision for forfeiture will be made by the court at the time of sentencing." Defendant acknowledged understanding the terms of the plea bargain, responded appropriately to all the judge's questions regarding his decision to plead guilty, and told the judge, as to the forfeiture issue, "It's in your hands at this point with the arguments from both counsel." The following was the entire allocution with regard to the factual basis for the plea:
Defense Counsel: [O]n or about January 14th of 2006, were you in the presence of a young lady ... K[.]W[.]?
Defendant: Yes.
Defense Counsel: And were you present with K[.]W[.] in the County of Hunterdon?
Defendant: Yes.
Defense Counsel: And in the Borough of Frenchtown?
Defendant: Yes.
Defense Counsel: And while you were in the presence of K[.]W[.] ... did you touch her intimate parts including her buttocks?
Defendant: Yes.
Defense Counsel: And did you do that without her freely-given consent?
Defendant: Yes.
Defense Counsel: And did you do that for purposes of your own sexual gratification?
Defendant: Yes.
The prosecutor accepted this allocution as adequate.
The judge then asked a series of questions in which defendant explained that K.W. was an adult, "[nineteen] or [twenty] at the time," and that he "knew [her] prior to" the events. When the judge asked if there was "some physical force" involved, defense counsel noted that "[t]he case law defines `physical force' ... [as] the lack of freely-given consent." The judge responded with apparent recognition of this principle, referencing State in re M.T.S., 129 N.J. 422, 609 A.2d 1266 (1992). A pre-sentence investigation report was ordered, and the parties agreed to brief the forfeiture issue.
At sentencing, after considering the briefs and arguments of the attorneys, the judge initially noted that subsection (a) of the forfeiture statute, N.J.S.A. 2C:51-2, was "inapplicable" because defendant had agreed to "forfeit the office he currently holds." As to the issue of permanent forfeiture of all future public employment, citing Moore v. Youth Corr. Inst., 119 N.J. 256, 574 A.2d 983 (1990), the judge listed those factors to be considered:
First, the Court must assess the gravity of the crime as revealed by its nature, context, [and] identity of the victim. Second, the Court must consider the qualifications required for the public employment. Moore explicitly rejected the proposition that merely because actions took place after hours or off duty they can not touch or involve a person's employment. [The] Supreme Court held that is not relevant when [and] where the employee committed the crime[;] [it *1106 is] only relevant if the offense rendered suspect the employee's future service to the State both in the capacity of his employee job at the time of the conviction and in every other potential capacity. When the infraction casts a shadow over the employee as to make his or her continued service incompatible or appear to be incompatible with the traits of trustworthiness, honesty, obedience to the law and order[,] forfeiture would be appropriate.
The judge then continued by comprehensively reviewing other precedent, which we discuss at length below.
Returning to the analysis in Moore, the judge considered the offense to which defendant had pled guilty. Noting that although only a fourth-degree crime, "that d[id]n't diminish the seriousness of the offense involved." He further observed that "[t]here was a victim," and defendant "took advantage of this individual who was incapacitated at the time." The judge further found that "defendant's actions were at direct odds with the duty to protect and serve the very community within which he was a police officer." Concluding the "acts did involve and touch his public office," the judge granted the State's application for permanent forfeiture of all future public employment, and entered the order under review.[2] This appeal followed.

B.
Before beginning our analysis of the statutory language and precedent, it is prudent to establish several facts that are not disputed, and delineate those that are. In addition to the facts defendant admitted during his plea allocution, it is conceded that he was not on duty when the offense occurred, and that he did not display or in any way use indicia of his offices during the commission of the crime. It is further conceded that the sexual contact took place in K.W.'s home.
In his brief, defendant includes additional factual allegations that were never disclosed during the plea allocution. For example, he claims that K.W. was his former girlfriend, and that he was at her apartment on the day in question "at her invitation."
Our dissenting colleague references other facts that are contained in the pre-sentence report's "offense circumstances" section, which is part of the appellate record, and specifically referenced in the State's brief. Therein, it was alleged that K.W. and a friend had "been drinking" before defendant and his friend arrived at the apartment. It further provided that K.W. "eventually fell asleep on her couch" and did not discover, until the next morning, male ejaculate in her underwear and soreness in her vaginal area. K.W. alleged that both defendant and his friend denied having intercourse with her, but she later learned she was pregnant. DNA tests performed subsequently established with near certainty that defendant had fathered the fetus.
At oral argument before us, defendant reiterated that he only admitted to the facts contained in his plea allocution, and he contests, as he did below, any other allegations. Therefore, defendant contends that the determination of whether his offense "involv[ed] or touch[ed] on" his office permitted consideration of only those facts he admitted. The State has advanced no argument to the contrary. Our own research has not revealed any precedent in this State that would permit the trial judge to consider facts not proven at trial, or admitted to by defendant at the *1107 time of his guilty plea, in deciding whether the offense required forfeiture under N.J.S.A. 2C:51-2(d). Our dissenting colleague concedes there is "no authority [that] allows consideration of contested facts when assessing defendant's conduct[.]" Post at 516, 971 A.2d at 1118.
In the sentencing context, our Supreme Court has held that the exercise of the judge's broad discretion must be "based upon findings of fact that are grounded in competent, reasonably credible evidence." State v. Roth, 95 N.J. 334, 363, 471 A.2d 370 (1984) (citing State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964)). Exactly what kind of evidence rises to the level of "competent, reasonably credible evidence," however, may be open to some debate. See Cannel, New Jersey Criminal Code Annotated, comment 4 on N.J.S.A. 2C:44-1 (2008) (noting "[m]any [] cases affirm all sorts of findings without discussion of the kinds of proof required"). The Court has, however, noted a significant limitation upon the use of evidence not adduced specifically through a defendant's plea allocution.
When a trial court imposes a sentence based on defendant's guilty plea, the defendant's admissions or factual version need not be the sole source of information for the court's sentencing decision. We have stated before that the court may look to other evidence in the record when making such determinations, that it should consider "the whole person", and all the circumstances surrounding the commission of the crime. What is importantwhen the court goes beyond defendant's admission or factual versionis that the court not sentence defendant for a crime that is not fairly embraced by the guilty plea.

[State v. Sainz, 107 N.J. 283, 293, 526 A.2d 1015 (1987) (internal citations omitted) (emphasis added).]
"[F]orfeiture of office is a harsh penalty[.]" State v. Och, 371 N.J.Super. 274, 281, 852 A.2d 1143 (App.Div.), certif. denied, 182 N.J. 150, 862 A.2d 58 (2004). But, it is, nonetheless, a civil remedy arising as a collateral consequence of a defendant's conviction. Old Bridge Public Wkrs. v. Old Bridge Twp., 231 N.J.Super. 205, 209-10, 555 A.2d 639 (App.Div.1989). Since a judge is permitted to look beyond a defendant's plea allocution in the context of imposing a criminal sentence, we concede arguendo without specifically deciding, that in some instances, consideration of extrinsic facts might be permissible to determine whether forfeiture of public employment is necessary under the statute.[3] If extrinsic facts are considered, however, it would appear that they must be supported by "competent, reasonably credible evidence," and they may not be used by the court to order forfeiture based upon "a crime that is not fairly embraced by the guilty plea."
Our dissenting colleague argues that in considering whether defendant's offense involved or touched on his office, "[a] view that gives weight only to the facts that defendant" admitted "fails to take into account the reality of the situation." Post at 516, 971 A.2d at 1118. In particular she cites to the pre-sentence report, and its allegations regarding the DNA test results, noting there is "no reason to second guess certain evidence used to identify defendant as K.W.'s assailant[.]" Post at 516, 971 A.2d at 1118. In *1108 reaching his decision, the trial judge found that defendant "took advantage of [K.W.] who was incapacitated at the time." Taken together, these two assertions imply 1) that defendant engaged in sexual intercourse with K.W.; and 2) that she was either asleep or inebriated to the point of incapacity at the time. In our opinion, using either of these factual allegations to support forfeiture in this case would essentially mean the decision was based upon "a crime that [wa]s not fairly embraced by the guilty plea."
For example, consideration of the DNA evidence implies that defendant committed an act of "sexual penetration," N.J.S.A. 2C:14-1(c). "Sexual penetration" is the essential element of "sexual assault," N.J.S.A. 2C:14-2, which serves to distinguish that crime from "sexual contact" in all its forms. N.J.S.A. 2C:14-3. Similarly, consideration of K.W.'s "incapacity" implies she was "physically helpless" or "mentally incapacitated" at the time of the offense. See N.J.S.A. 2C:14-1(g) and (i) (respectively defining those terms as a "condition in which a person is unconscious or is physically unable to flee or is physically unable to communicate unwillingness to act," and a "condition in which a person is rendered temporarily incapable of understanding or controlling his conduct due to the influence of a[n] ... intoxicant, or other substance administered to that person without his prior knowledge or consent....").[4] Sexual contact committed upon a victim in either state elevates the crime to "aggravated criminal sexual contact," N.J.S.A. 2C:14-3(a). Defendant did not plead guilty to sexual assault, or aggravated criminal sexual contact, and we believe that consideration, therefore, of these factual allegations contained in the pre-sentence report, never admitted by defendant, is inappropriate in deciding the forfeiture issue.
With this limitation in mind, we turn to the legal principles involved.

II.

A.
Having consented to the forfeiture of those positions he held at the time of sentencing, N.J.S.A. 2C:51-2(a), defendant's appeal is limited solely to the applicability of N.J.S.A. 2C:51-2(d) to the facts at hand. That section provides in pertinent part:
In addition to the punishment prescribed for the offense, and the forfeiture set forth in subsection a. of N.J.S.[A.] 2C:51-2, any person convicted of an offense involving or touching on his public office, position or employment shall be forever disqualified from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions. As used in this subsection, "involving or touching on his public office, position or employment" means that the offense was related directly to the person's performance in, or circumstances flowing from, the specific public office, position or employment held by the person.

[N.J.S.A. 2C:51-2(d) (emphasis added).]
The highlighted portion of the statute is entirely new language added by the Legislature in 2007. L. 2007, c. 49, § 5 (effective April 14, 2007).[5]
*1109 Thus, unlike subsection (a) which requires forfeiture of a currently-held official position if the defendant is convicted of either "an offense involving dishonesty" or "a crime of the third degree or above," N.J.S.A. 2C:51-2(a)(1), or "an offense involving or touching such office, position or employment[,]" N.J.S.A. 2C:51-2(a)(2), permanent forfeiture of all future public employment can only be ordered if the defendant is "convicted of an offense involving or touching on his public office, position or employment[,]" N.J.S.A. 2C:51-2(d).[6]
The Supreme Court noted this difference in McCann v. Clerk of Jersey City, 167 N.J. 311, 771 A.2d 1123 (2001). There, the Court held the distinction
implies ... a determination on the part of the Legislature to limit the scope of the [permanent future] disqualification provision to crimes that are related directly to an individual's performance in, or circumstances flowing from, a specific public office or position held by that individual. When an individual commits a crime wholly unrelated to his or her public office, the crime ordinarily cannot be characterized as involving or touching on the public office.
[McCann, supra, 167 N.J. at 321, 771 A.2d 1123 (emphasis added).]
The Court continued by concluding that the permanent forfeiture provisions did not apply to deny a former mayor, who was convicted of various crimes while out of office, from seeking re-election because those crimes did not involve or touch upon his public office. Id. at 322, 771 A.2d 1123.
The McCann Court distinguished the facts presented from those previously considered in Moore, supra. There the defendant, a corrections officer, was convicted of harassing his supervisor, allegedly in retaliation for disciplinary charges that had been lodged against him. Moore, supra, 119 N.J. at 259, 574 A.2d 983. The defendant made a harassing phone call to the supervisor's home, drove his truck onto the supervisor's lawn, and remained parked in the driveway before speeding off, only to return later and park nearby. Id. at 261, 574 A.2d 983. Later, the defendant was parked in his truck waiting as his supervisor arrived for work at the correctional facility. Id. at 262, 574 A.2d 983.
In considering whether the petty disorderly persons conviction for harassment warranted forfeiture, the Court stated,
The inquiry into whether an offense involves and touches on employment to the extent of meriting forfeiture requires careful examination of the facts and the evaluation of various factors in the "involve and touch" analysis. First, there is a need to assess the gravity of the crime as revealed by its nature, its context, and the identity of the victim. Second, there is a need to assess the qualifications required of the employee's public employment.
[Id. at 269, 574 A.2d 983.]
At the outset, the Moore Court "reject[ed] [the defendant's] contention that if the offense d[id] not take place during employment hours or on employment grounds, it d[id] not involve or touch employment." Ibid. Instead, "it is the substance of the crime, not whether it was committed during work hours or on work premises, that should determine whether the offense `involved *1110 and touched' employment." Id. at 270, 574 A.2d 983. "When the infraction casts such a shadow over the employee as to make his or her continued service appear incompatible with the traits of trustworthiness, honesty, and obedience to law and order, then forfeiture is appropriate." Ibid.
The Court in McCann, however, noted that "[t]he narrow question in Moore was whether conduct committed during non-business hours and off the premises of the correctional facility ... could be considered to involve or touch on [the defendant's] employment for purposes of forfeiture." McCann, supra, 167 N.J. at 322, 771 A.2d 1123. Regarding the language from Moore cited above, the McCann court cautioned,
[T]h[at] language ... should be understood in the context of the facts critical to our disposition, and it was undisputed that the petitioner's harassment of his co-employee in Moore bore a direct and substantial relationship to their respective governmental positions.
[Id. at 322-23, 771 A.2d 1123.]
A number of our subsequent decisions have tried to reconcile the holdings in Moore and McCann, considering specifically the statutory "involving and touching" language in the context of offenses committed by off-duty law enforcement officers. The trial judge referenced several of them, and we concede the contour of the landscape painted by these holdings is less than well-defined.
In State v. Gismondi, 353 N.J.Super. 178, 186, 801 A.2d 1178 (App.Div.2002), we affirmed the permanent forfeiture of the defendant's position as a police officer based upon his conviction for harassment, finding his off-duty conduct "b[ore] striking similarities" to that of the defendant in Moore. We summarized the conduct underlying the defendant's conviction as follows:
[I]n an adjacent community in which [the defendant] might well be called on to serve, he drove a truck on a wide-roaming drunken spree with a fellow officer in which an African-American neighborhood was terrorized, a trumped-up 911 call was made, a police service revolver was discharged, police badges were flashed to ward off attempts to investigate their conduct and no report was made to his superiors. Such conduct not only demonstrates bad judgment, but also [the defendant]'s participation in an abuse of authority resulting in the disruption of the public peace and exposure to the risk of harm of the lives and property of the citizens [the defendant] was sworn to protect.
[Id. at 189, 801 A.2d 1178.]
We concluded that such "conduct meets the more stringent standard announced in McCann of a `direct and substantial relationship' to [the defendant]'s governmental position." Ibid.
In State v. Williams, 355 N.J.Super. 579, 810 A.2d 1169 (App.Div.2002), the defendant, an off-duty Bayonne police officer, was convicted of fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4), "pointing a firearm in the direction of another under circumstances manifesting extreme indifference to human life." Williams, supra, 355 N.J.Super. at 582-83, 810 A.2d 1169. At trial, he testified that during a heated traffic encounter, and believing his wife was in danger, he displayed his badge, identified himself as a police officer, and fired his service revolver striking the victim's car. Id. at 584, 810 A.2d 1169.
In reversing the trial court's denial of the State's forfeiture petition, we noted "[t]he [] judge's reliance upon McCann [wa]s misplaced." Id. at 586, 810 A.2d 1169. Likening the facts presented as more akin to those in Moore, and reconciling the two Supreme Court precedents, we *1111 concluded that "the Court in McCann simply elucidated, without narrowing, the definition of conduct that involves or touches upon a public position; it is conduct that bears `some direct relationship' to the office." Id. at 589, 810 A.2d 1169 (quoting McCann, supra, 167 N.J. at 320, 771 A.2d 1123). We held that the defendant's "criminal conduct bore a direct relationship to his job and thus involved or touched his position as a police officer." Id. at 590, 771 A.2d 1123.
Lastly, in State v. Rodriguez, 383 N.J.Super. 663, 664-65, 893 A.2d 60 (App. Div.2006), the defendant, an off-duty police officer, drove through a red light, struck and killed a pedestrian, and fled the scene without stopping. He was convicted of third-degree leaving the scene of a fatal accident, N.J.S.A. 2C:11-5.1, and various motor vehicle offenses.[7]Id. at 665, 893 A.2d 60. The trial judge ordered the forfeiture of his position as a police officer, as required by N.J.S.A. 2C:51-2(a)(1) because defendant was convicted of a crime of the third degree. Id. at 665, 893 A.2d 60. The judge further ordered a permanent, future forfeiture of all public employment, id. at 665, 893 A.2d 60, which upon review we addressed as follows:
We disagree with [the defendant's] argument... that his off-duty behavior did not sufficiently involve or touch upon his position as a police officer.
We do not consider defendant's conduct here to be any less egregious or any less connected with his duties as a police officer than the behavior of the off-duty officers in Gismondi and Williams. In particular, we reject defendant's assertion that the offense of which he was convicted was "a very low level offense" as to which future disqualification pursuant to the dictates of N.J.S.A. 2C:51-2(d) was inappropriate. On the contrary, his conviction of third-degree leaving the scene of a fatal accident was based on proof beyond a reasonable doubt that he knew that there had been an accident and that he knowingly left the scene. Although the State, in order to secure defendant's conviction, was not required to prove he also knew that a pedestrian had been killed, that fact was one the judge could permissibly consider as part of the future disqualification analysis.[8]
In light of the fact that reporting to accident scenes and attending to the safety of the public are important parts of any police officer's duties, we think it plain that defendant's off-duty behavior that resulted in his conviction of this offense sufficiently involved and touched upon his position that future disqualification was appropriate.
[Id. at 668-69, 893 A.2d 60.]
Since McCann was decided, we have also considered the issue of conduct "involving or touching" upon a defendant's public employment in circumstances where the defendant was not a law enforcement officer. In State v. Pavlik, 363 N.J.Super. 307, 309, 832 A.2d 940 (App.Div.2003), the defendant, a laborer in the municipal Department of Public Works, was convicted in the municipal court of assorted disorderly persons offenses that stemmed from a violent domestic dispute between him and his grandfather. The trial judge ordered forfeiture under N.J.S.A. 2C:51-2(a)(2) finding *1112 the offenses involved or touched upon the defendant's position. Ibid. In reversing, we concluded "forfeiture requires a finding of a nexus between the defendant's conduct and his position or employment." Id. at 311, 832 A.2d 940. Specifically noting McCann's limitation of Moore's holding to the facts presented, we further concluded "as a matter of common sense, the phrase `involving or touching such office, position or employment' requires some nexus between the conduct and the employment." Id. at 312, 832 A.2d 940.
We believe it noteworthy that when all these cases were decided, neither subsection (a) nor subsection (d) of N.J.S.A. 2C:51-2 contained any definitional language regarding the phrase, "involving or touching," as used in the statute. The Legislature explained its intention, however, in amending the statute in 2007 to include a definition of the terms:
Th[is] bill amends current law concerning forfeiture of public office to include a definition of the phrase concerning crimes and offenses "involving or touching" public office or employment, in accordance with the definition set forth by the New Jersey Supreme Court in McCann v. Clerk of [] Jersey City, 167 N.J. 311, 771 A.2d 1123 (2001). It provides that a crime or offense "involving or touching" public office or employment means that the crime or offense was related directly to the person's performance in, or circumstances flowing from, a specific public office or position held by the person. As the Supreme Court stated in McCann: "When an individual commits a crime wholly unrelated to his or her public office, the crime ordinarily cannot be characterized as involving or touching on the public office."
[Comments accompanying L. 2007, c. 49.]
Thus, the Legislature clearly intended to "amend current law," adopt the Supreme Court's holding in McCann, and limit future permanent forfeiture to only those situations where a defendant's "crime or offense" 1) "related directly to the person's performance in ... a specific public office or position held by the person"; or 2) "related directly to ... circumstances flowing from, a specific public office or position held by the person." One noted commentator has observed that the amendment was intended "to narrow the definition of touching public office as it applies to [] subsection [(d)]." Cannel, supra, comment 1 on N.J.S.A. 2C:51-2.
From the foregoing, we think it clear that the trial judge's extensive reliance upon the factors enunciated in Moore was misplaced. The Court in McCann explicitly limited Moore to its facts, and the Legislature has since acted, expressly adopting the Court's analysis in McCann, and rejecting what it described as the then "current law." As a result, the permanent future forfeiture of public employment required by subsection (d) is limited only to convictions that meet the statutory definition. We reject the State's contention made before us at oral argument that subsection (d) permits the exercise of the judge's discretion in its application. Once a violation of the statute is proven, "entry of an order of forfeiture is mandatory and automatic in all but one limited instance."[9]Och, supra, 371 N.J.Super. at 281, 852 A.2d 1143 (citing In re Vitacco, 347 N.J.Super. 337, 343, 790 A.2d 178 (App. Div.2002)); State v. Ercolano, 335 N.J.Super. 236, 245, 762 A.2d 259 (App.Div.2000), *1113 certif. denied, 167 N.J. 635, 772 A.2d 937 (2001).
Having reviewed the historical precedent leading to the current statute, we turn to the statutory language as recently amended by the Legislature. We further examine its application to the arguments defendant has raised in this appeal.

B.
"When called on to construe a legislative enactment, our goal is to discern and implement the intent of the Legislature." State v. Smith, 197 N.J. 325, 332, 963 A.2d 281 (2009). "Because the wording used by the Legislature provides the most direct path toward understanding legislative intent, we examine the plain language of the statute and ascribe to the words their ordinary meaning." Ibid. (citing DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005)); see N.J.S.A. 2C:1-2(c) (requiring "[t]he provisions of the Code [to] be construed according to the fair import of their terms"). "[W]hen a statute's language is clear and unambiguous, we need delve no deeper that (sic) the act's literal terms to divine the Legislature's intent." Smith, supra, 197 N.J. at 333, 963 A.2d 281 (internal quotations omitted). However, if "the statute contains some ambiguity ... it is permissible to turn to extrinsic evidence for aid in interpreting [it]." Ibid. In such circumstances, we look to the "legislative history, committee reports, and contemporaneous construction." DiProspero, supra, 183 N.J. at 493, 874 A.2d 1039 (quotations and citations omitted); see N.J.S.A. 2C:1-2(c) ("when the [statutory] language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this section and the special purposes of the particular provision involved"); and see Cannel, supra, comment 4 on N.J.S.A. 2C:1-2(c) (noting this "interpretive rule" is a "supplement" to "common law maxims" of statutory construction). We believe the amendatory language adopted by the Legislature is clear on its face and requires no resort to extrinsic tools for interpretation.
Permanent future forfeiture is required if "the offense was related directly to the person's performance in ... the specific public office, position or employment held by the person." Thus, if the offense occurs while a defendant is performing the functions of his office, and arises from some illegal, and obviously unauthorized, act, forfeiture is required. Similarly, if the offense occurs not while the defendant is performing the functions of his office, but is "related directly" to the defendant's performance in that position, forfeiture is also required.
So, for example, when a police lieutenant was convicted of disorderly persons offenses for stealing a rifle he took possession of during a municipal gun buy-back program, forfeiture was appropriate. State v. Medina, 349 N.J.Super. 108, 115-122, 793 A.2d 68 (App.Div.), certif. denied, 174 N.J. 193, 803 A.2d 1165 (2002). In State v. Lazarchick, 314 N.J.Super. 500, 505-08, 527, 715 A.2d 365 (App.Div.), certif. denied, 157 N.J. 546, 724 A.2d 804 (1998), overruled on other grounds, Flagg v. Essex Cty. Pros., 171 N.J. 561, 796 A.2d 182 (2002), the defendant, convicted of simple assault and harassment stemming from his traffic stop of a citizen, was required to forfeit his position because the offense "involved and touched upon defendant's employment as a police officer." Forfeiture was also appropriate when the defendants/corrections officers were convicted of disorderly persons offenses involving their assault on a prison inmate under their supervision, State v. Pitman, 201 N.J.Super. 21, 24-26, 492 A.2d 680 (App.Div. 1985), or when a corrections officer was convicted of disorderly persons theft offenses *1114 when he submitted salary reimbursement vouchers, for his pay, falsely claiming he was at National Guard service on the days in question. State v. Lee, 258 N.J.Super. 313, 314-15, 609 A.2d 513 (App. Div.1992). In such cases, the defendants' misconduct was "directly related to [their] employment[,]" id. at 319, 609 A.2d 513, and the performance of their duties, even though the specific conduct was unauthorized.
Additionally, under the statute as amended, permanent future forfeiture is required if "the offense was related directly to ... circumstances flowing from, the specific public office, position or employment held by the person." By including this alternative category of offenses, we must assume the Legislature intended to reach other kinds of misconduct in which there was a direct relation between the offense and other circumstances of the public position, though not necessarily involving the performance of the duties of the position. Thus, under this construction, the facts in Gismondi and Williams would still require forfeiture because in each case, although the defendant was not performing the duties of his position, and the offense did not relate directly to the performance of those duties, the offense nonetheless involved other circumstances that "flow[ed] from" the position. In Gismondi, the defendant and his fellow officer engaged in a "wide-roaming drunken spree... in which ... a police service revolver was discharged, police badges were flashed to ward off attempts to investigate their conduct and no report was made to [defendant's] superiors." Gismondi, supra, 353 N.J.Super. at 189, 801 A.2d 1178. In Williams, the defendant displayed his badge, identified himself as a police officer, and discharged his service weapon. Williams, supra, 355 N.J.Super. at 584, 810 A.2d 1169. In short, there was a direct relationship between the offense and the "circumstances flowing from[] the specific public position[.]"
Indeed, we have little doubt that the result in Moore would still be the same under the new statutory definition. Though the defendant's conduct there was not directly related to the performance of his duties as a corrections officer, it was directly related to "circumstances flowing" from that position. The defendant's victim was not some private citizen, but rather was his supervisor, who was targeted because he brought disciplinary charges against the defendant. As the Supreme Court noted, the defendant's misconduct "bore a direct and substantial relationship to their respective governmental positions." McCann, supra, 167 N.J. at 323, 771 A.2d 1123 (emphasis added).
In Rodriguez, supra, we attempted to reconcile McCann's standard, essentially adopted by the Legislature and codified in the amendatory language, with the facts presented. Specifically, we noted a nexus between the defendant's position as a police officer, and his conviction for leaving the scene of an accident "[i]n light of the fact that reporting to accident scenes and attending to the safety of the public are important parts of any police officer's duties[.]" Rodriguez, supra, 383 N.J.Super. at 669, 893 A.2d 60. Rodriguez was decided before the new definitional language was added to N.J.S.A. 2C:51-2(d). Because the issue is not before us, we hazard no opinion whether the defendant's offense in Rodriguez "was related directly to [his] performance in, or circumstances flowing from," his position as a police officer.
Turning to the circumstances of this case, we conclude that defendant's offense clearly did not directly relate to his "performance in" the position of sheriff's officer or police officer. The offense occurred while off-duty, in a private home involving *1115 someone defendant knew, as opposed to a member of the public, and had no nexus to his positions in law enforcement. Nor was defendant's offense "related directly to circumstances flowing from" his positions. Defendant did not use or threaten the use of his offices in any way to commit the offense. He did not display or utilize any indicia of his offices at any time. The offense was not related to any circumstance that flowed from defendant being a sheriff's officer or a police officer.
Our dissenting colleague argues that defendant's criminal conduct, and whether it required forfeiture because it touched or involved his office, must be examined in "light" of his status as a law enforcement officer, a "special kind of public employee." Twp. of Moorestown v. Armstrong, 89 N.J.Super. 560, 566, 215 A.2d 775 (App. Div.1965), certif. denied, 47 N.J. 80, 219 A.2d 417 (1966). She further notes that "all of the proven circumstances surrounding defendant's commission of the crime, demonstrates a deviation from law-abiding conduct, which remains the hallmark of a police officer." Post at 517, 971 A.2d 1119.
In this regard, she echoes an argument the State made in its brief, contending that defendant's duties as a law enforcement officer included the obligation to "obey the law," making "defendant theoretically [culpable] of the crime of official misconduct[,]" N.J.S.A. 2C:30-2, for committing any offense under the Criminal Code. In turn, the State contended every offense committed by a sworn law enforcement officer should result in permanent future forfeiture because it would involve or touch upon the position. At oral argument, the State specifically abandoned that position, arguing instead that the "totality of circumstances" surrounding the offense needed to be considered under Moore. Despite the State's abandonment of this contention, we address it briefly in light of the dissent.
We agree that law enforcement officers occupy a unique status and their "obligation to act in a responsible manner is especially compelling." In re Phillips, 117 N.J. 567, 576, 569 A.2d 807 (1990). However, if we extend our colleague's argument to its logical conclusion, a conviction for any offense, no matter how trivial, committed by such an officer would automatically result in the forfeiture of his present position and any future public employment. Had the legislature intended such a result, it clearly could have said so. See State v. Gelman, 195 N.J. 475, 487, 950 A.2d 879 (2008) (recognizing the Legislature's ability to "draft language to accomplish [its] objective").
In interpreting N.J.S.A. 2C:30-2, "Official Misconduct," our courts have consistently recognized that not every offense committed by a law enforcement officer results in a violation of the statute. See State v. Hinds, 143 N.J. 540, 549, 674 A.2d 161 (1996) (noting, in considering off-duty police officer's conduct, "not every offense committed by a public official involves official misconduct"). Instead it is only "when law-enforcement officers commit an act of malfeasance because of the office they hold or because of the opportunity afforded by that office, [that] their conduct sufficiently relates to their office to support a conviction under N.J.S.A. 2C:30-2(a)." State v. Bullock, 136 N.J. 149, 157, 642 A.2d 397 (1994).
Lastly, as we have already noted, in amending the forfeiture statute to define the terms "involving or touching," the Legislature further limited the statute's reach to the defendant's "performance in, or circumstances flowing from, the specific public office, position or employment" held by the defendant. N.J.S.A. 2C:51-2(d) (emphasis added). The obligation to obey *1116 the criminal laws of this state is not "specific" to the public offices defendant held. Rather, it is a responsibility imposed upon everyone in society. As Chief Justice Weintraub eloquently explained nearly fifty years ago,
All persons have the "duty" to obey the law. More accurately, there is no "duty" but rather a liability to punishment. Every public officer of course is thus amenable in his capacity of private citizen, but he does not necessarily commit two crimes by a single act merely because he happens also to be a public official.
[State v. Cohen, 32 N.J. 1, 13, 158 A.2d 497 (1960) (Weintraub, C.J., concurring).]
We conclude that defendant's offense did not involve or touch upon his public offices. We are, therefore, compelled to reverse the order under review to the extent it imposed a permanent future forfeiture of all public employment pursuant to N.J.S.A. 2C:51-2(d).
Reversed.
LIHOTZ, J.A.D., dissenting.
The question for our examination is limited to whether defendant, who, as part of a negotiated plea agreement, has forfeited his public offices as a part-time municipal police officer and full-time county sheriff's officer, N.J.S.A. 2C:51-2(a), is also subject to future disqualification from "any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions," as set forth in N.J.S.A. 2C:51-2(d). If defendant was convicted of a crime constituting "an offense involving or touching on his public office, position or employment," future disqualification is mandated. Ibid.; State v. Rodriguez, 383 N.J.Super. 663, 666, 893 A.2d 60 (App.Div.2006). I disagree with the majority's conclusion that the sexual assault downgraded to fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b), committed "while [defendant was] off-duty, in a private home involving someone defendant knew, as opposed to a member of the public, [] had no nexus to his position in law enforcement." Therefore, I would affirm the trial court's order of forfeiture.
I cannot accede to the majority's interpretation of the statute that mandates disqualification only for conduct performed in the course of performing public duties or while invoking the trappings of the office. Our courts have repeatedly noted the nature of the responsibilities of the office itself must be considered when analyzing whether the person was "convicted of an offense involving or touching on his public office." N.J.S.A. 2C:51-2(d). See Moore v. Youth Corr. Inst., 119 N.J. 256, 270, 574 A.2d 983 (1990) ("[w]hen the infraction casts such a shadow over the employee as to make his or her continued service appear incompatible with the traits of trustworthiness, honesty, and obedience to law and order, then forfeiture is appropriate."); McCann v. Clerk of Jersey City, 167 N.J. 311, 322, 771 A.2d 1123 (2001) (forfeiture was not warranted because the criminal offenses were committed while the plaintiff was not employed as a public official and thus bore no direct relationship to the public responsibilities during his public service); Rodriguez, supra, 383 N.J.Super. at 669, 893 A.2d 60 (off-duty police officer who failed to report a hit and run accident he caused was subject to future disqualification, as reporting to accident scenes and attending to the safety of the public are important parts of any police officer's duties).
Even though these authorities were rendered prior to the statute's April 14, 2007 amendment, the Legislature's added language requiring a nexus between the conduct and the employment, such that a conviction is "related directly to an individual's *1117 performance in, or circumstances flowing from, a specific public office or position held," would not change the conclusions as the statute's standard has been in effect since first enunciated by the Court in McCann, supra, 167 N.J. at 321, 771 A.2d 1123. Further, application of this standard does not eliminate the need for an examination of whether the offense is incompatible with the performance in the specific public office held. In fact, McCann requires just such an analysis.
McCann involved an action filed by a political candidate who had previously served as the Mayor of Jersey City. The portion of the Court's examination applicable to this matter reviewed whether the forfeiture statute precluded plaintiff's current candidacy for the upcoming mayoral election due to his past convictions for various federal charges, involving mail fraud, wire fraud, false swearing, and income tax evasion, committed while he was not in office. McCann, supra, 167 N.J. at 312, 771 A.2d 1123. The Court determined that because the crimes occurred while the plaintiff was in the private sector, "there [wa]s no indication in the record that any direct relationship exist[ed] between the offenses and his mayoral responsibilities." Id. at 322, 771 A.2d 1123. The Court concluded McCann was not subject to disqualification under N.J.S.A. 2C:51-2(d), because "inquiry under subsection (d) is limited to determining whether McCann's offenses touched upon either of his specific tenures as Mayor of Jersey City[.]" Ibid. Thus, a review of whether forfeiture was warranted entailed an analysis of whether the crime committed bore a relationship to the responsibilities of the public office then held. Ibid. Because McCann was not in a public office when he evaded his income tax obligations and committed other offenses, he could not be said to have engaged in conduct that abused the public trust or responsibilities associated with his public employment. Ibid.
The amendment to N.J.S.A. 2C:51-2(d) echoes this requirement, as the legislative comments specifically state an intention to adopt the definition enunciated in McCann. Comments accompanying L. 2007, c. 49. That amendment neither suggests nor implies a rejection of past court precedent, which examines the context of the offense as it relates to the public responsibilities of the employment at hand. Every case requires an analysis of whether a defendant's conduct is inconsistent with "the degree of care and responsibility expected of an employee" in the specific position held. State v. Pavlik, 363 N.J.Super. 307, 311, 832 A.2d 940 (App.Div.2003). The application of such an analysis to this matter is provided below.
Additionally, the unique circumstances reviewed in McCann, that is, whether criminal acts committed while not in public office can preclude future public service, are not presented here. Defendant was employed and held the public offices of police and sheriff's officer at the time he assaulted the victim, K.W. In my view, that dissimilarity from the facts in McCann renders a distinguishably different result, particularly as it relates to an examination of whether the crimes committed bore a "direct relationship to the responsibilities" of those offices.
In the context of disciplinary proceedings, this court has identified the unique responsibilities of law enforcement officers. Specifically we have recognized
"a police officer is a special kind of public employee. His primary duty is to enforce and uphold the law. He carries a service revolver on his person and is constantly called upon to exercise tact, restraint and good judgment in his relationship with the public. He represents law and order to the citizenry and must present an image of personal integrity and dependability in order to *1118 have the respect of the public, particularly in a small community....."
[Township of Moorestown v. Armstrong, 89 N.J.Super. 560, 566, 215 A.2d 775 (App.Div.1965), certif. denied, 47 N.J. 80, 219 A.2d 417 (1966).]
See also, In re Carter, 191 N.J. 474, 486, 924 A.2d 525 (2007); In re Disciplinary Procedures of Phillips, 117 N.J. 567, 577, 569 A.2d 807 (1990).
Even though these precedents do not arise in an examination of whether forfeiture applies, they aptly describe the responsibilities of police officers, State v. Gismondi, 353 N.J.Super. 178, 185, 801 A.2d 1178 (App.Div.2002), who like those of judges or lawyers, require the taking of an oath to uphold the law. These positions "require a high level of honesty, integrity, sensitivity, and fairness in dealing with members of the public, knowledge of the law, and a pattern and exhibition of law-abiding, conduct." Ibid. Further, the responsibilities of those exclusive positions give the people who hold them an elevated societal position, accompanied by an implied enhanced responsibility of good behavior as one "`who stands in the public eye as an upholder of that which is morally and legally correct.'" Hartmann v. Police Dept. of Ridgewood, 258 N.J.Super. 32, 40, 609 A.2d 61 (App.Div.1992) (quoting Appeal of Emmons, 63 N.J.Super. 136, 140, 164 A.2d 184 (App.Div.1960)). If this were not so, it would tend to destroy public respect of and confidence in the value of upholding the law itself. It is in that light defendant's criminal conduct is examined.
Here, defendant pled guilty to fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b), regarding the assault of twenty year old K.W. As noted, the events occurred on January 13, 2006, while defendant, then age twenty-eight was at K.W.'s residence. K.W.'s discovery of her attacker's identity was compromised and delayed by the fact that the attack occurred while she slept. Almost one year later, following the termination of K.W.'s pregnancy and the State's receipt of expert DNA evidence that reflected defendant was 99.9% likely the father of the fetus, an indictment issued.
In making a determination of whether to impose permanent future forfeiture, the court may consider other evidence in the record, and is not restricted to the factual basis admitted by the defendant. Although I concede no authority allows consideration of contested facts when assessing defendant's conduct, I see no reason to second guess certain evidence used to identify defendant as K.W.'s assailant, which was considered by the trial court.
The majority aptly identifies the broad discretion of a court in reviewing facts prior to sentencing following a defendant's guilty plea as stated by the Supreme Court in State v. Sainz, 107 N.J. 283, 293, 526 A.2d 1015 (1987). The Court stated: "When a trial court imposes a sentence based on defendant's guilty plea, the defendant's admissions or factual version need not be the sole source of information for the court's sentencing decision." Ibid. Because forfeiture is a civil remedy arising as a collateral consequence of a defendant's conviction, I conclude the trial court's broad discretion allows consideration of extrinsic established facts. For the same reason, I disagree with the majority's suggestion that the use of established collateral facts is limited and cannot result in an order of forfeiture based upon "a crime that is not fairly embraced by the guilty plea." Ibid.
"Forfeiture is not a sentencing disposition[.]" Old Bridge Public Workers and Sanitation Union v. Tp. of Old Bridge, 231 N.J.Super. 205, 209, 555 A.2d 639 (App. Div.1989) (citing State v. Heitzman, 107 N.J. 603, 604, 527 A.2d 439 (1987)). "While a judgment or order imposing a *1119 civil penalty may be incorporated in the sentence, it remains a civil remedy." Ibid. The limitation on use of extrinsic facts imposed in sentencing a criminal defendant is inapplicable in this civil matter.
Here, a view that gives weight only to the facts that defendant committed the unlawful sexual contact, while off duty, to a known victim, without invoking his status as an officer, leading to a conclusion that the crime is unrelated to his office, fails to take into account the reality of the situation. Unquestionably, defendant who is more than eight years older than the victim, performed the sexual contact for his own sexual gratification. In my view, it matters not that defendant knew K.W., the assault occurred in her home, or that defendant was off-duty at the time. Moore, supra, 119 N.J. at 269, 574 A.2d 983; Rodriguez, supra, 383 N.J.Super. at 669, 893 A.2d 60; Gismondi, supra, 353 N.J.Super. at 189, 801 A.2d 1178. This was a flagrant offense, not a de minimus encounter.
Consideration of all of the proven circumstances surrounding defendant's commission of the crime, demonstrates a deviation from law-abiding conduct, which remains the hallmark of a police officer. Assuredly, the conduct is an offense "directly related" to defendant's "performance in" the position of his public law enforcement employment.
"It is the public policy of this State that `person[s] holding any public office, position or employment' must avoid committing serious criminal acts or offenses which involve or touch upon their governmental duties, or sacrifice their right to governmental employment. This is a harsh response to a problem serious enough to justify the harshness. The purpose is to prevent miscreants and corrupt officials from again holding office."
[Cedeno v. Montclair State Univ., 163 N.J. 473, 478, 750 A.2d 73 (2000) (quoting Pastore v. County of Essex, 237 N.J.Super. 371, 378-79, 568 A.2d 81 (App.Div.1989)).]
For these reasons, I respectfully dissent from the conclusion the majority has reached and would affirm the trial court's determination of imposing the consequence of forfeiture, disqualifying defendant from "any [public] office or position of honor, trust or profit[,]" as mandated by N.J.S.A. 2C:51-2(d).
NOTES
[1] The record does not contain such an order.
[2] The order also included a provision requiring defendant to forfeit his current public positions "including but not limited to his former positions as a Police Officer in New Jersey Law Enforcement." Defendant does not appeal from that portion of the order.
[3] Implicit support for this conclusion may be found in the language of N.J.S.A. 2C:51-2(b)(1) that permits the court to stay forfeiture entered under N.J.S.A. 2C:51-2(a)otherwise "[i]mmediately" effective "upon a finding of guilt""pending a hearing on the merits at the time of sentencing." Presumably, at that hearing, the court may consider facts extrinsic to the verdict or guilty plea.
[4] In the indictment, the State alleged that defendant committed aggravated sexual assault because the victim was "physically helpless" at the time.
[5] The Legislature also added nearly-identical new language to subsection (a) by providing As used in this subsection, "involving or touching such office, position or employment" means that the offense was related directly to the person's performance in, or circumstances flowing from, the specific public office, position or employment held by the person.

[N.J.S.A. 2C:51-2(a).]
[6] A collateral consequence of forfeiture under N.J.S.A. 2C:51-2(d) is the inability to have the conviction expunged. See N.J.S.A. 2C:52-2(b) (prohibiting expungement for "any crime committed by a person holding any public office, position or employment ... if the crime involved or touched such office, position or employment"); and see In re Forfeiture of Public Office of Nunez, 384 N.J.Super. 345, 350 n. 4, 894 A.2d 1176 (App.Div.), certif. denied, 187 N.J. 491, 901 A.2d 954 (2006).
[7] The offense was subsequently upgraded to a second-degree crime in 2007. L. 2007, c. 83, § 1.
[8] We do not believe this dicta adversely affects our earlier conclusion that the trial judge in this case was not permitted to consider certain facts not admitted by defendant at the time of his plea allocution. In Rodriguez there was a trial and defendant was permitted to test the State's allegations. Such was not the case here.
[9] The only exception is the waiver provisions contained in N.J.S.A. 2C:51-2(e) that are not implicated in this case.