1 A.3d 640

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
JEREMIAH HUPKA, DEFENDANT–RESPONDENT.

Argued March 8, 2010—Decided August 3, 2010.

Rabner, C.J., dissented and filed opinion in which Hoens, J., joined.

*Bennett A. Barlyn,* Assistant Prosecutor, argued the cause for appellant (*J. Patrick Barnes,* Hunterdon County Prosecutor, attorney).

*Darren M. Gelber* argued the cause for respondent (*Wilentz, Goldman & Spitzer,* attorneys; *Mr. Gelber* and *Ellen Torregrossa–O'Connor,* on the brief).

*Carol M. Henderson,* Assistant Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Paula T. Dow,* Attorney General, attorney).

*Lawrence S. Lustberg* argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (*Gibbons,* attorneys; *Mr. Lustberg* and *Ellen P. Lubensky,* on the brief).

Justice LaVECCHIA delivered the opinion of the Court.

In this matter we are called on to review the Appellate Division's reversal of a May 2, 2008, trial court order that disqualified defendant Jeremiah Hupka "from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions, pursuant to *N.J.S.A.* 2C:51–2 d." [1]  A majority of the Appellate Division panel agreed with defendant that his conviction for fourth-degree criminal sexual contact, *N.J.S.A.* 2C:14–3(b), did not "involve or touch upon" the public offices he held in law enforcement.  The State has brought this appeal as of right based on the dissent filed below.  *See R.* 2:2–1(a)(2).  For the reasons expressed, we affirm the judgment of the Appellate Division.  Defendant, by his voluntary agreement, will never again seek future employment in this State or any other as a law enforcement officer.  However, we hold that the State's demand for permanent disqualification was not supported on this record.  The offense to which he pled does not compel his forfeiture of office and permanent disqualification under *N.J.S.A.* 2C:51–2.

I.

Defendant was employed as a Hunterdon County sheriff's officer, and also worked part-time as a Frenchtown police officer, when he was indicted on January 9, 2007, for an incident that

---

[1] The trial court also ordered defendant's forfeiture of his positions by operation of *N.J.S.A.* 2C:51–2(a)(2), notwithstanding that defendant had resigned voluntarily.

occurred a year earlier. The indictment involved a sexual encounter with a young female acquaintance of defendant. It is undisputed that at the time of the incident, defendant was neither on duty, nor in uniform. The following description of the alleged events is taken from the "Offense Circumstances" section of his presentence report. Importantly, these allegations have never been admitted by defendant, nor have they been tested or proved at trial.

> On the night of January 13, 2006, the victim, K.W., had been drinking with [a female friend.] In the early morning hours of January 14, 2006, the defendant, Jeremiah Hupka, and his [male] friend ... arrived at K.W.'s apartment. K.W. eventually fell asleep on her couch. Upon awaking the next morning, she woke up, felt ill and went to the bathroom where she was sick. While in the bathroom, she saw male ejaculate in her underwear and in the toilet and noticed soreness in her vaginal region. K.W. confronted both the defendant and [his male friend], however both denied having sex with her. K.W. later learned that she was pregnant. Upon terminating the pregnancy, DNA tests were conducted on the fetus and compared to that of the defendant, [his male friend] and the victim's boyfriend.... It was determined by the State's DNA expert that there was a 99.9% possibility that the defendant had fathered the fetus.

Those allegations led a Hunterdon County grand jury to return a two-count indictment, charging defendant with first-degree aggravated sexual assault in violation of *N.J.S.A.* 2C:14–2(a)(7), and second-degree sexual assault in violation of *N.J.S.A.* 2C:14–2(c)(1). Defendant negotiated a plea bargain, pursuant to which he pled guilty to a single count of fourth-degree criminal sexual contact, *N.J.S.A.* 2C:14–3(b), as a lesser-included offense of the second-degree sexual assault charge, and the first-degree charge was to be dismissed. However, there was more to the plea bargain. Although defendant had voluntarily resigned both of his law enforcement positions after the indictment issued, the State made the plea conditional on defendant's agreement never again to seek employment as a police officer in New Jersey or any other state, a condition to which defendant agreed. Further, the State raised statutory forfeiture and permanent disqualification from public employment pursuant to *N.J.S.A.* 2C:51–2 (the forfeiture statute), due to defendant's status as a public employee when the offense was committed. Defendant would not agree to statutory forfei-

ture and permanent disqualification and it was not made a condition of the plea. Rather, the parties agreed to have the applicability of *N.J.S.A.* 2C:51–2 resolved by the court.

In his plea allocution, defendant admitted that, on January 14, 2006, he was in Frenchtown with the victim, K.W., with whom he had had a prior relationship, and that he "touch[ed] her intimate parts, including her buttocks[,] ... without her freely-given consent[,] ... [and] for purposes of [his] own sexual gratification." Satisfied that defendant's admissions created a sufficient factual basis to sustain the fourth-degree charge of criminal sexual contact, the court accepted the plea. The court then directed defense counsel and the State to brief whether defendant should be held to have statutorily forfeited his public employment and be permanently disqualified from any future public office or position as a result of his conviction.

The court heard argument on the issue at the time of sentencing. The State urged the court to find that the conviction "touched on" defendant's employment as a law enforcement officer because police officers are "on duty" at all times and are obligated to uphold the law. In reliance on *State v. Rodriguez,* 383 *N.J.Super.* 663, 893 *A.*2d 60 (App.Div.2006), the State argued that defendant's conviction not only bore directly on his police position, but also, by extension, on defendant's competency to perform any public job. Defendant disagreed with the sweeping argument advanced by the State. He argued that the proper inquiry as to the forfeiture statute's applicability was whether there existed a specific and direct nexus between the offense committed and the public office held. Urging the court to find that no such nexus was presented on the facts here, defendant argued against the entry of an order of forfeiture and disqualification.

The trial court, relying on the two-pronged test enunciated in *Moore v. Youth Correctional Institute,* 119 *N.J.* 256, 574 *A.*2d 983 (1990), concluded that defendant's conviction for fourth-degree criminal sexual contact was serious and was "at direct odds with the duty to protect and serve the very community within which he

was the officer." Accordingly, the court ordered defendant's forfeiture of and permanent disqualification from public office pursuant to *N.J.S.A.* 2C:51-2, and thereupon sentenced defendant, in accordance with the terms of the plea agreement, to a two-year term of probation, with the conditions noted previously.

Defendant appealed,[2] and a divided Appellate Division panel reversed. *State v. Hupka,* 407 *N.J.Super.* 489, 493, 971 *A.*2d 1102 (App.Div.2009). The majority, pointing to the amendments to the forfeiture statute made in 2007 to incorporate this Court's holding in *McCann v. Clerk of Jersey City,* 167 *N.J.* 311, 771 *A.*2d 1123 (2001), discerned a legislative preference for the "involving and touching" standard enunciated in *McCann,* over the *Moore* standard on which the trial court relied. *Hupka, supra,* 407 *N.J.Super.* at 505–06, 971 *A.*2d 1102. Applying the *McCann* standard to the facts presented, the majority found no nexus between the performance of defendant's public duties and the crime for which he pled and was convicted, *id.* at 509–510, 971 *A.*2d 1102; thus, the Appellate Division reversed the order of permanent disqualification, *id.* at 511–12, 971 *A.*2d 1102.

The dissenting judge argued that the focus should be on "whether the offense is incompatible with the performance in the

---

[2] Defendant asserts that his main objection to the order of disqualification does not arise from his desire to obtain a position as a police officer. His counsel reiterated at oral argument that defendant has "agreed that he's not going to seek employment as a law enforcement officer in the future." In fact, defendant's guilty plea was conditioned on that agreement. Thus, the result in this case will impact only the court-ordered forfeiture and disqualification; it has no impact on his promise not to reenter the field of law enforcement in New Jersey or any other state.

Rather, defendant's purpose on appeal is to avoid the sweeping nature of the disqualification order, which, as his counsel also pointed out at oral argument, "means he can't even seek employment as a sanitation worker for a municipality, a groundskeeper at a public golf course, or any of the myriad of other public employment opportunities that might await somebody apart from law enforcement." In addition, defendant hopes to avoid the operation of *N.J.S.A.* 2C:52–2(b), which directs that a "crime shall not be subject to expungement if the crime involved or touched [a public] office, position or employment."

specific public office held." *Id.* at 513, 971 *A.*2d 1102 (Lihotz, J.A.D., dissenting). Convinced that the civil nature of the forfeiture statute allowed judges to consider collateral facts, the dissent looked beyond the plea allocution to the presentence report, and concluded that defendant's conduct was much more serious than his plea suggested, and was related directly to his role as a law enforcement officer. *Id.* at 515–17, 971 *A.*2d 1102. Because defendant broke the law and thereby deviated from his public duties, the dissent concluded that permanent disqualification from public office or employment was proper. *Id.* at 517, 971 *A.*2d 1102.

Based on the dissent below, the State appealed as of right pursuant to *Rule* 2:2–1(a)(2). We granted the subsequent requests by the Attorney General of New Jersey and the Association of Criminal Defense Lawyers of New Jersey to appear as amici curiae.

## II.

The forfeiture statute in New Jersey's Criminal Code is implicated when "[a] person holding any public office, position, or employment, elective or appointive, under the government of this State or any agency or political subdivision thereof . . . is convicted of an offense. . . ." *N.J.S.A.* 2C:51–2(a). Although related to a criminal conviction, "[f]orfeiture and disqualification are not penal consequences; rather, they are collateral consequences." *Flagg v. Essex County Prosecutor,* 171 *N.J.* 561, 575, 796 *A.*2d 182 (2002).

Pursuant to the forfeiture statute, an employee who has been convicted of a criminal offense suffers the collateral civil consequence of forfeiting his or her public position if

(1) He is convicted under the laws of this State of an offense involving dishonesty or of a crime of the third degree or above or under the laws of another state or of the United States of an offense or a crime which, if committed in this State, would be such an offense or crime;

*(2) He is convicted of an offense involving or touching such office, position or employment;* or

(3) The Constitution so provides.

*As used in this subsection, "involving or touching such office, position or employment" means that the offense was related directly to the person's performance in, or circumstances flowing from, the specific public office, position or employment held by the person.*
[*N.J.S.A.* 2C:51–2(a)(1) to (3) (emphasis added).]

In the limited circumstances in which an individual is convicted of an offense "involving or touching" his or her public role, the statute requires not only forfeiture of the position held at the time of conviction, *N.J.S.A.* 2C:51–2(a)(2), but also disqualification from holding any public position in the future:

> any person convicted of an offense involving or touching on his public office, position or employment shall be forever disqualified from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions. As used in this subsection, "involving or touching on his public office, position or employment" means that the offense was related directly to the person's performance in, or circumstances flowing from, the specific public office, position or employment held by the person.
> [*N.J.S.A.* 2C:51–2(d).] [3]

Moreover, a conviction for a crime "involving or touching" a public office becomes a permanent fixture on the record of the convicted individual; a related provision bars the expungement of such offenses:

> Records of conviction for any crime committed by a person holding any public office, position or employment, elective or appointive, under the government of this State or any agency or political subdivision thereof and any conspiracy or attempt to commit such a crime shall not be subject to expungement if the crime involved or touched such office, position or employment.

---

[3] Thus, disqualification results only if an offense involved or touched public office; it does not follow from a conviction involving dishonesty or one above the third-degree unless that offense is determined to have involved or touched the public position. That determination may be made at a hearing following the conviction. *See N.J.S.A.* 2C:51–2(b)(1) (directing that order of forfeiture shall be entered "[i]mmediately upon a finding of guilt by the trier of fact or a plea of guilty entered in any court of this State unless the court, for good cause shown, orders a stay of such forfeiture pending a hearing on the merits at the time of sentencing.") While orders of forfeiture may enter immediately following conviction above the third degree, forfeiture for a conviction "involving or touching" office often requires a more nuanced examination. Thus, the hearing authorized by *N.J.S.A.* 2C:52–2(b)(1) is particularly important and necessary where, as in this case, the conviction does not relate directly to the public office in an obvious fashion.

[*N.J.S.A.* 2C:52–2(b).][4]

The matter before us requires that we determine whether the 2007 amendments to the forfeiture statute were intended by the Legislature to extend the statute's reach to the circumstances presented by defendant's conviction.

## III.

### A.

Our standard of review is a familiar one. Because the trial court's determination to subject defendant to the forfeiture and disqualification provisions of *N.J.S.A.* 2C:51–2 based on his conviction represents that court's "interpretation of the law and the legal consequences that flow from established facts," its conclusion is "not entitled to any special deference." *Manalapan Realty, L.P. v. Twp. Comm.,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995) (citation omitted). As such, our review is de novo. *See ibid.* Moreover, the standards governing the performance of our de novo interpretative task are equally well known. When we examine a statute, "our goal is to discern and effectuate the Legislature's intent. [Thus, t]he plain language of the statute is our starting point." *Patel v. N.J. Motor Vehicle Comm'n,* 200 *N.J.* 413, 418, 982 *A.*2d 445 (2009) (quotation marks and citations omitted).

We begin by "read[ing] and examin[ing] the text of the act and draw[ing] inferences concerning the meaning from its

---

[4] While we do not explore the parameters of this statutory provision in our opinion today, we mention the collateral consequence precluding convicted public officials from obtaining expungements because that provision provides significant impetus for defendant's appeal from the trial court's order. Defendant concedes in submissions to this Court that he has agreed, of his own accord and as a condition to the State's agreement to accept the plea bargain entered in this case, never to seek employment as a law enforcement officer in New Jersey or elsewhere. However, the trial court's order of forfeiture and permanent disqualification renders him unable to obtain an expungement of the conviction at any time.

composition and structure." 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 47:1 (7th ed. 2007). That common sense canon of statutory construction is reflected also in the legislative directive codified at *N.J.S.A.* 1:1–1:

> In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.

If a plain-language reading of the statute "leads to a clear and unambiguous result, then our interpretive process is over. Only if there is ambiguity in the statutory language will we turn to extrinsic evidence. When such evidence is needed, we look to a variety of sources. Central among them is a statute's legislative history." *Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys.,* 192 *N.J.* 189, 195–96, 927 *A.2d* 543 (2007) (citations omitted).

### B.

█ In this matter, defendant's conviction does not implicate one of the more straightforward provisions of the forfeiture statute. Defendant's conviction was not for a crime involving dishonesty or a crime of the third degree or above, for which forfeiture is rather mechanically applied. *See N.J.S.A.* 2C:51–2(a)(1). Rather, the order of forfeiture and disqualification entered against defendant was based on *N.J.S.A.* 2C:51–2(a)(2), and thus requires determination whether defendant was "convicted of an offense involving or touching" his public employment as a law enforcement officer.

█ In the forfeiture statute itself, the Legislature included a definitional statement summarizing the intent behind the precondition that an offense must involve or touch the particular office held before the permanent disqualification statute is implicated. *N.J.S.A.* 2C:51–2(d) provides:

> As used in this subsection, "involving or touching on his public office, position or employment" means that the offense was related directly to the person's performance in, or circumstances flowing from, the specific public office, position or employment held by the person.

That language signals strongly that the disqualification provision was intended to be contingent on a conclusion that the conviction was related, directly and specifically, to the position held. Based on that legislative emphasis, trial courts contemplating entry of an order of forfeiture and disqualification for an offense involving or touching public office pursuant to *N.J.S.A.* 2C:51-2(a) and (d) must examine the relationship between the exact offense committed and the particular position held by the individual convicted in order to reach a conclusion that the commission of the offense had some direct connection to the office held. Those explicit requirements stand in contrast to the Appellate Division dissent's suggested reading of the statute as allowing for the imposition of disqualification based on generalized descriptions of implied expectations for the performance of certain duties.

Despite the legislative effort to clarify its intention as to what "involving and touching" means, one cannot dismiss altogether a contention that some flexibility—indeed, ambiguity—remains in respect of the statute's reach. Thus, in performing the interpretative task required in this matter, we find it to be necessary and, ultimately, particularly helpful to reach into the trove of guidance that legislative history offers in respect of the forfeiture statute. Fortunately, to the extent any degree of ambiguity lingers, the legislative history underlying the evolution of the forfeiture and disqualification statute clarifies the legislative intent and eviscerates any possible uncertainty.

## C.

Prior case law has ably detailed the passage and development of the forfeiture statute. *See, e.g., State v. Musto,* 187 *N.J.Super.* 264, 308–10, 454 *A.*2d 449 (Law Div.1982) (examining history of disqualification provision). For purposes of resolving the present case, however, our focus need be drawn to the more recent, and relevant, revisions to the statutory scheme.

Although forfeiture and disqualification provisions existed in New Jersey law going back to 1898, *see L.* 1898, *c.* 235, §§ 21, 25,

& 28 (disqualifying certain public officials convicted of accepting bribes from holding any future public office), *N.J.S.A.* 2C:51–2 sprung into being as part of the comprehensive overhaul of New Jersey's criminal laws that occurred with the passage of the Code of Criminal Justice in 1978, *see L.* 1978, *c.* 95, § 2C:51–2. As enacted at that time, the forfeiture provision would become operational when a public official or employee was convicted of, among other things, "an offense involving or touching such office, position or employment[.]" *Id.* at § 2C:51–2(a)(2). Like the modern statute, the disqualification provision authorized a permanent bar on public office and employment following any such conviction. *Id.* at § 2C:51–2(c). However, neither the forfeiture provision nor the disqualification provision attempted to define which convictions could be said to "involve or touch" a particular public role. *See id.* at § 2C:51–2(a), (c).

The language of those provisions remained unchanged during the thirty-year period between 1978 and 2007. In 2007, the Legislature added the definitional provision clarifying that, as applied to disqualification, " 'involving or touching such office, position or employment' means that the offense was related directly to the person's performance in, or circumstances flowing from, the specific public office, position or employment held by the person." *N.J.S.A.* 2C:51–2(a). Not content with the insertion of that additional definitional language alone, the Legislature also included a detailed description of its intent in revising the statute, explaining that the language

> amends current law concerning forfeiture of public office to include a definition of the phrase concerning crimes and offenses "involving or touching" public office or employment, *in accordance with the definition set forth by the New Jersey* Supreme Court in *McCann* [, *supra,*] 167 *N.J.* 311 [771 *A.*2d 1123] (2001). It provides that a crime or offense "involving or touching" public office or employment means that the crime or offense was related directly to the person's performance in, or circumstances flowing from, a specific public office or position held by the person. As the Supreme Court stated in *McCann:* "When an individual commits a crime wholly unrelated to his or her public office, the crime ordinarily cannot be characterized as involving or touching on the public office." [*S.* 14 (Sponsor's Statement), 212th Leg. (N.J.2007); *Assemb. 20* (Sponsor's Statement), 212th Leg. (N.J.2007).]

Those legislative modifications to *N.J.S.A.* 2C:51–2(a) and (d) were approved on March 15, 2007, and the statement describing the incorporation of this Court's holding in *McCann* was included in the printing of the final text of the bill. *See L.* 2007, *c.* 49, § 5 and statement following § 10.

Although the Appellate Division had occasion to consider application of the forfeiture and disqualification provisions of *N.J.S.A.* 2C:51–2(a) and (d) in varying factual contexts between the rendering of the *McCann* opinion in 2001 and the amendment of the statute in 2007, the Legislature specifically, and explicitly, singled out *McCann*, incorporating that case law into the statute's wording and into its explanation of the amendatory language. *See ibid.* And, the Legislature did so to the exclusion of the myriad other rulings—from this Court and the Appellate Division—that had construed the forfeiture and disqualification provisions of *N.J.S.A.* 2C:51–2 under varying theories, and with varying results.[5]

*McCann* represents our most recent, relevant pronouncement on the "involving or touching" language of the forfeiture and disqualification statute. *Cf. Flagg v. Essex County Prosecutor,* 171 *N.J.* 561, 796 *A.*2d 182 (2002) (addressing standard of review to be applied to decisions concerning waiver under *N.J.S.A.* 2C:51–2(e)). That fact, coupled with the Legislature's apparent preference for the analytical framework that we adopted in

---

[5] Many of those rulings involved off-duty police officers. *See State v. Rodriguez,* 383 *N.J.Super.* 663, 893 *A.*2d 60 (App.Div.2006) (concluding that officer leaving scene of drunken driving accident he caused involved or touched general officer duties to uphold law and assist public, and affirming disqualification due to bearing conviction had on his ability to perform any future job for state); *State v. Williams,* 355 *N.J.Super.* 579, 810 *A.*2d 1169 (App.Div.2002) (ordering forfeiture and disqualification for conduct involving or touching public employment where off-duty officer flashed badge and fired weapon during bout of road rage); *State v. Gismondi,* 353 *N.J.Super.* 178, 801 *A.*2d 1178 (App.Div.2002) (finding that officer's flashing of badge and firing of service revolver during period of off-duty drunkenness constituted abuse of authority that involved or touched employment); *see also Moore v. Youth Corr. Inst.,* 119 *N.J.* 256, 574 *A.*2d 983 (1990) (affirming operation of forfeiture statute to disqualify corrections officer convicted of harassing supervisor).

*McCann,* catapults our analysis in this matter down the path set by the principles enunciated in that opinion.

### D.

Gerald McCann served as mayor of Jersey City between 1982–86 and 1990–92; during the latter term, he was indicted on fifteen counts including mail, wire, and income tax fraud for conduct that had occurred in the interim between his terms in office. *McCann, supra,* 167 *N.J.* at 316–17, 771 *A.*2d 1123. He was convicted in federal court, and forfeited the balance of his 1990–94 term pursuant to *N.J.S.A.* 2C:51–2(a)(1), which requires forfeiture of public office upon conviction of a crime of dishonesty or any crime of the third degree or above. *Ibid.* Following service of his sentence, McCann again sought to become a candidate for mayor, but his election petition was rejected by the Clerk of Jersey City, on the grounds that his convictions disqualified him permanently from office pursuant to *N.J.S.A.* 2C:51–2(d). *Id.* at 317, 771 *A.*2d 1123. The trial court ordered the petition to be processed, but the Appellate Division reversed and, relying on our earlier ruling in *Moore v. Youth Correctional Institute,* 119 *N.J.* 256, 574 *A.*2d 983 (1990), upheld the Clerk's determination not to process the petition, finding that McCann was disqualified from public position. *Id.* at 318–19, 322, 771 *A.*2d 1123.

On appeal, we reversed the Appellate Division judgment in respect of its application of *N.J.S.A.* 2C:51–2(d) to defendant's conviction, observing that the language of the provision "considered in the context of the entire statute, suggests that a conviction does not 'involve[ ]' or 'touch[ ] upon' a public office unless the facts underlying the conviction bear some direct relationship to an office held by the individual." *Id.* at 320, 771 *A.*2d 1123. We noted the different standards for forfeiture set forth in subsection (a) of the statute, but observed that only one—where a conviction *involves* or *touches* a public office—could result in permanent disqualification from public office or position. *Id.* at 320–21, 771 *A.*2d 1123.

> The operative distinction between the "involving dishonesty" and "involving or touching on" standards can be found in the Legislature's decision to limit permanent disqualification from office only to those persons *"convicted of an offense involving or touching on his public office."* *N.J.S.A.* 2C:51–2(d) (emphasis added). That phrase implies, in our view, a determination on the part of the Legislature to limit the scope of the disqualification provision to crimes that are related directly to an individual's performance in, or circumstances flowing from, a specific public office or position held by that individual. When an individual commits a crime wholly unrelated to his or her public office, the crime ordinarily cannot be characterized as involving or touching on the public office.
> [*Id.* at 321, 771 *A.*2d 1123.]

Toward the same end, two justices, in concurrence, observed that "[t]he Legislature obviously intended to distinguish between two classes of felons, those who commit dishonest acts, and those who use their office to do so. We must respect that legislative classification because the distinction it makes seems both sensible and real." *Id.* at 336, 771 *A.*2d 1123 (Long and LaVecchia, JJ., concurring and dissenting) (citation omitted).

As for the broader applicability of *Moore*, the *McCann* Court characterized that case as resolving the "narrow question . . . whether conduct committed during non-business hours and off the [work] premises . . . could be considered to involve or touch on his employment for purposes of forfeiture." *Id.* at 322, 771 *A.*2d 1123 (citation omitted). In *Moore, supra*, this Court had affirmed an order of forfeiture and disqualification entered against a corrections officer who had been convicted of harassment for off-duty behavior he directed at a supervisor in retaliation for a work-related disciplinary action. 119 *N.J.* at 260–62, 271, 574 *A.*2d 983. There, we said that the involving or touching analysis required an examination of the "nexus between the crime and the employment to determine if there is a sufficient relationship between the two to warrant the harsh penalty of forfeiture." *Id.* at 266, 574 *A.*2d 983. To achieve that goal, we crafted a two-part test: "First, there is a need to assess the gravity of the crime as revealed by its nature, its context, and the identity of the victim. Second, there is a need to assess the qualifications required of the employee's public employment." *Id.* at 269, 574 *A.*2d 983. We also observed that, "[w]hen the infraction casts such a shadow over the employee as to

make his or her continued service appear incompatible with the traits of trustworthiness, honesty, and obedience to law and order, then forfeiture is appropriate." *Id.* at 270, 574 *A.*2d 983.

In *McCann, supra,* we cautioned against reading *Moore's* more expansive language in exclusion and untethered to the facts of that case. 167 *N.J.* at 322–23, 771 *A.*2d 1123. Thus, *McCann* qualified the *Moore* holding by emphasizing that it "should be understood in the context of the facts critical to [its] disposition. . . ." *Ibid.; see also id.* at 336, 771 *A.*2d 1123 (Long and LaVecchia, JJ., concurring and dissenting) (rejecting Appellate Division's overly broad reading of *Moore* along same lines).[6] Acknowledging that "McCann's conduct reveal[ed] qualities that are relevant to his fitness for the office of Mayor," the *McCann* Court also recognized that "our inquiry under subsection (d) is limited to determining whether McCann's offenses touched upon either of his specific tenures as Mayor of Jersey City. . . ." *Id.* at 322, 771 *A.*2d 1123. Finding "no indication in the record that any direct relationship exists between the offenses and [McCann's] mayoral responsibilities," we concluded that the disqualification provision of *N.J.S.A.* 2C:51–2(d) did not apply to McCann.[7] *Ibid.*

With that clear direction from *McCann,* adopted by the Legislature in its operative provisions of *N.J.S.A.* 2C:51–2 and in its explication of purpose, we turn to apply that understanding of "touching and involving" to the forfeiture and disqualification issue concerning defendant.

---

[6] Our dissenting colleagues suggest that we fail to harmonize *Moore* and *McCann.* To the contrary, our holding today recognizes that *Moore, as qualified and limited by McCann,* has continuing viability. In light of our view of the 2007 amendments to the forfeiture act, it is rather the overly broadened application of *Moore* by the Appellate Division pre–2007 that we cannot, and do not attempt to, harmonize.

[7] The majority nevertheless barred McCann's candidacy on other grounds: the disqualification provision of the Faulkner Act, *N.J.S.A.* 40:69A–166, since repealed. *McCann, supra,* 167 *N.J.* at 332, 771 *A.*2d 1123; *L.* 2003, *c.* 145, § 2 (eff. Aug. 8, 2003).

## IV.

Here, there is no serious question that the specific crime to which defendant pled guilty did not involve, in that it did not directly relate to, his performance in office. As the Appellate Division majority succinctly stated, there was no relationship between defendant's employment as a police officer, the trappings of that office, or his work-related connections, and the commission of the offense to which he pled guilty, or to his victim:

> Turning to the circumstances of this case, we conclude that defendant's offense clearly did not directly relate to his "performance in" the position of sheriff's officer or police officer. The offense occurred while off-duty, in a private home involving someone defendant knew, as opposed to a member of the public, and had no nexus to his positions in law enforcement. Nor was defendant's offense "related directly to circumstances flowing from" his positions. Defendant did not use or threaten the use of his offices in any way to commit the offense. He did not display or utilize any indicia of his offices at any time. The offense was not related to any circumstance that flowed from defendant being a sheriff's officer or a police officer.
>
> [*Hupka, supra,* 407 *N.J.Super.* at 509–510, 971 *A.2d* 1102.]

We readily agree. Even the dissent in the Appellate Division seemingly did not disagree.[8] The dissenting judge below, howev-

---

[8] However, our dissenting colleagues question how, after the admissions defendant made at his plea hearing, he could act in a law enforcement capacity in any sexual assault or domestic abuse matter. *Post* at 230–32, 1 *A.3d* at 645–46. Played to its conclusion, that logic amounts to a rewriting of the statute. It would compel automatic forfeiture and disqualification any time a law enforcement officer is convicted of violating the law: how could a police officer with a speeding conviction enforce speeding laws?

Moreover, that interpretation ignores the facts of *McCann, supra,* in which the defendant was convicted of fifteen counts including mail and wire fraud, and making false statements to the IRS and banks. 167 *N.J.* at 316, 771 *A.2d* 1123. Following those convictions for fraud and fiscal irresponsibility, we said: "We do not dispute that McCann's conduct reveals qualities that are relevant to his fitness for the office of Mayor. However, our inquiry under subsection (d) is limited to determining whether McCann's offenses touched upon either of his specific tenures as Mayor of Jersey City, and there is no indication in the record that any direct relationship exists between the offenses and his mayoral responsibilities." *Id.* at 322, 771 *A.2d* 1123.

Likewise, on the facts of this case, "[w]e do not dispute that [Hupka's] conduct reveals qualities that are relevant to his fitness for" law enforcement. *See ibid.* However, we decline, in light of our precedent and the clear legislative intent, to

er, felt it appropriate to examine beyond the four corners of defendant's plea to conclude that defendant's offense was worse than that to which he pled (calling it "a flagrant offense") and, further, that having committed any sexual offense was incompatible with his duty as a law enforcement officer. *See id.* at 516–17, 971 *A.*2d 1102 (Lihotz, J.A.D., dissenting). We reject the latter interpretation of "touching on" his position as inconsistent with *McCann*, and therefore, beyond the legislative intent behind the latest clarification of *N.J.S.A.* 2C:51–2(d)'s reach. Although the issue does not influence our conclusion that defendant's actions did not touch or concern his employment as an officer of law enforcement, we now address the Appellate Division dissent's improper reliance on the unproven, disputed allegations of the presentence report.

## V.

### A.

The dissent below, supplemented by the submissions of the amici curiae, calls into question the proper role of presentence reports in forfeiture and disqualification proceedings.

In this case, the "Offense Circumstances" section of the presentence report alleges very different circumstances than those admitted by defendant at his guilty plea. Though the trial court imposed the order of forfeiture and disqualification based strictly on the fourth-degree offense of criminal sexual contact to which defendant pled and on the facts stated in his allocution, the dissenting judge of the Appellate Division looked beyond defendant's plea, to the allegations contained in the presentence report, and concluded that defendant's "was a flagrant offense, not a de minimis encounter." *Ibid.* Defendant has denied, consistently and

---

allow our individual views in that regard to color our interpretive responsibility to enforce the statute as designed by the Legislature. And, in the application of the statute to the instant matter, there is no fact—disputed or otherwise—that ties defendant's conviction to his public office or any of its trappings.

vehemently, the "Offense Circumstances" described in the presentence report.

It is black letter law that where a material factual matter is contested, it cannot be relied on without a resolution of the disputed evidence. *See, e.g., Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995) (setting forth standard for determining whether material factual dispute precludes grant of summary judgment); *Central Paper Distrib. Servs. v. Int'l Records Storage & Retrieval Serv., Inc.,* 325 *N.J.Super.* 225, 232, 738 *A.*2d 962 (App.Div.1999) (holding legal issue not amenable to summary judgment when dependent on disputed operative facts that require plenary hearing opportunity), *certif. denied,* 163 *N.J.* 74, 747 *A.*2d 283 (2000); *State v. Green,* 62 *N.J.* 547, 564, 303 *A.*2d 312 (1973) (discussing rule requiring disclosure of presentence reports so as to provide defendants " 'with fair opportunity to be heard on any adverse matters relevant to the sentencing' " (citing *State v. Kunz,* 55 *N.J.* 128, 144, 259 *A.*2d 895 (1969))). Thus, as a general proposition, we agree that the State may produce evidence outside an allocution to establish whether a defendant's offense involved or touched on his office. And, if uncontroverted, that evidence can be considered by the trial judge. However, that is not the case here. Here, defendant denied the material in the presentence report. The dissenting judge therefore had two choices: omit consideration of it or order a hearing to resolve it. Procedurally, the disputed evidence could not be used "as is." [9]

Our dissenting colleagues suggest that we are extending undue protection to convicted public office holders. In fact, what we are doing is narrowly disapproving of the dissenting Appellate Division judge's use of disputed facts in the presentence report. Most important is the following. We clearly recognize that at a disqualification hearing the facts to show that an offense is one that touches or involves a public position may have to come from

---

[9] That procedural step is unnecessary in this matter because there is no fact, disputed or not, that ties defendant's conviction to his office.

outside the conviction. For example, the connection to one's public office or position may not be apparent from the evidence to support the verdict or plea. Nevertheless, it is fair for the State, on notice and opportunity to defendant to be heard, to seek to show that connection to the position or office.

### B.

Finally, we note that, to some, it may appear that the plain language of the statute places a hurdle on the State's track toward resolution of charges via plea negotiations. However, what appears to be an impediment in the plea bargain process is but an additional and necessary step toward a transparency in purpose that will provide notice to a defendant that forfeiture and disqualification are possible consequences to a plea.

Prosecutors should include discussions of forfeiture and disqualification in plea negotiations with public employees. Where a defendant is charged with a crime of dishonesty or a crime of the third degree or above and the State is considering accepting a plea to a lesser-included offense, if forfeiture is desired the State should raise voluntary forfeiture as a condition of the plea. And, when a defendant is charged with a crime that might be regarded as involving or touching his or her public position, the State should, likewise, require an allocution that either establishes the connection between the crime and the position to enable the court to sustain a subsequent forfeiture and disqualification order, or, alternatively, should negotiate a voluntary disqualification from a future position.

In the present case, the prosecutor acted with circumspection, negotiating a plea that was conditioned on defendant voluntarily and permanently relinquishing his right to present and future employment as a law enforcement officer. At the same time, no such agreement was reached requiring defendant's disqualification from all future public positions or offices. *See N.J.S.A.* 2C:51–2(d). Furthermore, defendant's factual circumstances do not support an "involving or touching" conclusion in respect of his offense.

Defendant did not use his office or its trappings in any way in the commission of his offense. We reject application of some ill-defined incompatibility-with-duties analysis that an expansive reading of *Moore*, when untethered to its specific facts, is said to support. To the extent that our courts, in the past, have applied the touching and involving language broadly to police officers, the reasoning of *McCann* as it has been applied to this matter should control going forward.

## VI.

The judgment of the Appellate Division is affirmed.

Chief Justice RABNER, dissenting.

Defendant Jeremiah Hupka pleaded guilty to criminal sexual contact for conduct he engaged in while he was employed as a Hunterdon County Sheriff's officer and a part-time local police officer. To establish a factual basis for the plea, he admitted in open court that, in the community where he worked as a law enforcement officer, he victimized a nineteen-or twenty-year-old woman by having sexual contact with her without consent. He admitted touching her "intimate parts, including her buttocks." He also conceded that he did so for his own sexual gratification.

The Presentence Report (PSR) revealed more: the victim had been drinking; defendant arrived at her apartment afterward with another man; the victim fell asleep on her couch; and she felt ill the following morning, and saw male ejaculate in her underwear and felt soreness in her vaginal area. When the victim confronted defendant and the third person, both denied having sex with her. After she later learned that she was pregnant, DNA tests established that there was a 99.9% probability that defendant was the father.

I agree with the majority that trial courts may consider facts beyond those contained in a defendant's plea allocution to evaluate a collateral civil motion for forfeiture. A hearing should be held to resolve disputed material facts on which a court may wish to rely.

The majority, however, offers little guidance as to what facts may be considered in this case to test defendant's conduct against the standard for disqualification contained in the forfeiture statute, *N.J.S.A.* 2C:51–2(d). Instead, the majority concludes that no facts presented, whether in dispute or not, warrant disqualification from public office here.

Because the offense defendant committed involved and touched on his public positions and directly relates to his performance as a law enforcement official, his conduct should subject him to disqualification. For those reasons, I respectfully dissent.

## I.

The majority properly notes that facts outside of a plea allocution or conviction may be considered to determine whether an offense involved or touched on a defendant's public office or directly related to the person's performance in that particular office. *Ante* at 241–42, 1 *A.*3d at 652–53. Practices followed at sentencing proceedings offer some guidance as to the type of facts that may be evaluated at a forfeiture hearing.

Judges routinely consider facts beyond those admitted during a defendant's plea allocution to determine the proper sentence. They have wide discretion in assessing the details of the offense and the full background of the offender. *State v. Natale,* 184 *N.J.* 458, 472, 878 *A.*2d 724 (2005); *State v. Jones,* 179 *N.J.* 377, 407, 846 *A.*2d 569 (2004); *State v. Marzolf,* 79 *N.J.* 167, 180, 398 *A.*2d 849 (1979); *State v. Green,* 62 *N.J.* 547, 563–72, 303 *A.*2d 312 (1973). All relevant information is to be considered, including reliable hearsay. *Natale, supra,* 184 *N.J.* at 486, 878 *A.*2d 724 (noting rules of evidence do not apply at sentencing) (citation omitted). Even prior arrests that did not result in convictions may be relied on. *Green, supra,* 62 *N.J.* at 563–72, 303 *A.*2d 312. In short, the sentencing process should entail an inquiry " 'broad in scope, largely unlimited either as to the kind of information that may be considered, or the source from which it may come.' " *State v. Davis,* 96 *N.J.* 611, 620, 477 *A.*2d 308 (1984) (quoting *United*

*States v. Tucker*, 404 *U.S.* 443, 446, 92 *S.Ct.* 589, 591, 30 *L.Ed.*2d 592, 596 (1972)).[1]

The Appellate Division noted that "[w]hen a trial court imposes a sentence based on defendant's guilty plea, the defendant's admissions or factual version need not be the sole source of information for the court's sentencing decision." *State v. Hupka*, 407 *N.J.Super.* 489, 497, 971 *A.*2d 1102 (App.Div.2009) (quoting *State v. Sainz*, 107 *N.J.* 283, 293, 526 *A.*2d 1015 (1987)). *Sainz* went on to explain that when a court goes beyond that information, it should "not sentence defendant for a crime that is not fairly embraced by the guilty plea." *Sainz, supra,* 107 *N.J.* at 293, 526 *A.*2d 1015 (citation omitted). That language, though, must be considered in the context of the Court's decision, which itself affirmed the use of facts beyond those admitted by the defendant in his guilty plea. *Id.* at 294, 526 *A.*2d 1015 (finding trial court properly considered larger quantity of drugs and other drug activity not admitted in factual basis). Any facts relied on at sentencing must be "grounded in competent, reasonably credible evidence." *State v. Roth*, 95 *N.J.* 334, 363, 471 *A.*2d 370 (1984) (citation omitted).

The forfeiture statute, to be sure, is not a criminal law, nor is forfeiture of public office a penal sanction. Rather, the law imposes a civil remedy, which is a collateral consequence of a conviction. *Flagg v. Essex County Prosecutor*, 171 *N.J.* 561, 570, 575, 796 *A.*2d 182 (2002); *Old Bridge Pub. Workers & Sanitation Union v. Twp. of Old Bridge*, 231 *N.J.Super.* 205, 209–10, 555 *A.*2d 639 (App.Div.1989).

That distinction is important. Collateral civil proceedings are not subject to the "full panoply of rights applicable to a criminal proceeding." *In re Registrant, C.A.*, 146 *N.J.* 71, 94, 679 *A.*2d 1153 (1996) (citing *Doe v. Poritz*, 142 *N.J.* 1, 34, 662 *A.*2d 367

---

[1] A judge's exercise of discretion at sentencing must of course comport with the principles of *Blakely v. Washington*, 542 *U.S.* 296, 124 *S.Ct.* 2531, 159 *L.Ed.*2d 403 (2004), *Natale*, and their progeny.

(1995)) (discussing nature of hearing to determine tier classification and manner of notification under Megan's Law). As at sentencing proceedings, the rules of evidence do not necessarily apply at hearings to determine collateral civil penalties. *Id.* at 94–96, 679 *A.*2d 1153. Reliable hearsay evidence may be accepted. *Id.* at 95–96, 679 *A.*2d 1153. In addition, civil remedies that are not based on convictions have been upheld. *Id.* at 91, 662 *A.*2d 367.

In evaluating what type of information may be considered under the forfeiture law, the statute is the proper starting point. Its text, which does not explicitly answer the question, and its overall purpose inform the discussion.

The applicable part of the forfeiture law provides that in addition to punishment for the offense, "any person convicted of an offense involving or touching on his public office, position or employment shall be forever disqualified from holding" a public position. *N.J.S.A.* 2C:51–2(d). The statute defines " 'involving or touching on his public office, position or employment' " to "mean[ ] that the offense was related directly to the person's performance in, or circumstances flowing from, the specific public office, position or employment held by the person." *Ibid.*

Because the statute does not specify what evidence to consider, the law's purpose should be examined. *See N.J.S.A.* 2C:1–2(c) ("[W]hen the [statutory] language is susceptible of differing constructions it shall be interpreted to further … the special purposes of the particular provision involved.").

The aim behind the forfeiture statute is plain: to bar "those who have once violated the public trust from [having] a second opportunity." *Cedeno v. Montclair State Univ.*, 163 *N.J.* 473, 477, 750 *A.*2d 73 (2000) (alteration in original, citations and internal quotation marks omitted). The statute is "designed to protect the public, not the offender." *Id.* at 477–78, 750 *A.*2d 73.

Consistent with that aim, the statute specifically limits the ability of courts to stay forfeiture orders. *N.J.S.A.* 2C:51–2(b) &

(c). It directs that forfeiture take place "immediately" upon a jury's finding of guilt or a plea of guilty unless a court, for good cause shown, orders a stay "pending a hearing on the merits at the time of sentencing"; otherwise, no advance notice or hearing is provided. *N.J.S.A.* 2C:51–2(b)(1). The statute empowers successors in office to void official actions taken by a convicted person, which would go into effect within sixty days of a forfeiture order. *N.J.S.A.* 2C:51–2(c). It tightly restricts waiver of forfeiture proceedings. *N.J.S.A.* 2C:51–2(e). It also bars defendants from bidding for public work if they have been convicted of certain listed offenses. *N.J.S.A.* 2C:51–2(f). Thus, the law's overarching approach is to protect the public's interest over the offender's. That principle should inform decisions about the breadth of facts that may be considered in applying the law.

The statute and prior case law also provide guidance as to when an offense involves or touches upon a public office and requires forfeiture. In *Moore v. Youth Correctional Institute,* this Court affirmed the removal and forfeiture of office of an off-duty corrections officer convicted of harassing his supervisor. 119 *N.J.* 256, 259, 574 *A.*2d 983 (1990). The Court outlined the following inquiry to determine "whether an offense involves and touches on employment": "First, there is a need to assess the gravity of the crime as revealed by its nature, its context, and the identity of the victim. Second, there is a need to assess the qualifications required of the employee's public employment." *Id.* at 269, 574 *A.*2d 983.

In 2001, in *McCann v. Clerk of Jersey City,* 167 *N.J.* 311, 771 *A.*2d 1123 (2001), the Court again addressed when a conviction involves or touches upon a public office. The Court concluded that a candidate for the office of mayor of Jersey City, who had previously served in that position, was not disqualified under the forfeiture statute as a result of certain federal offenses he committed when he was out of office. *Id.* at 316, 323–24, 771 *A.*2d 1123. The Court explained that section 2(d) of the forfeiture law "limit[ed] the scope of the disqualification provision to crimes that are related directly to an individual's performance in, or circumstances

flowing from, a specific public office or position held by that individual." *Id.* at 321, 771 *A.*2d 1123.

*McCann* did not reject or overturn *Moore.* It distinguished *Moore* on its facts. *Id.* at 322, 771 *A.*2d 1123. In 2007, the Legislature, without commenting on *Moore,* adopted the language in *McCann* quoted above and added it to section 2(d). *L.* 2007, *c.* 49, § 5. On that record, the majority concludes that the Legislature apparently preferred the analytical framework adopted in *McCann, see ante* at 234–36, 1 *A.*3d at 648–49, despite the Legislature's silence on that point. The majority also does not demonstrate why the two cases, which are not inconsistent, cannot be harmonized.

The majority instead highlights a passage from *McCann* that sharpens the issue presented. The Court noted that McCann's behavior "reveal[ed] qualities that are relevant to his *fitness* for" office but nonetheless did not disqualify him because they did not "touch on" or disclose a "direct relationship" with the office of Mayor. *McCann, supra,* 167 *N.J.* at 322, 771 *A.*2d 1123 (emphasis added). That passage makes clear that it is not proper to confuse or blend the notion of "general fitness" for office with a person's direct inability to perform the duties of a specific office. A public employee's misconduct should be considered with the latter concept in mind.

The Appellate Division's decision in *State v. Rodriguez,* 383 *N.J.Super.* 663, 893 *A.*2d 60 (App.Div.2006), is both relevant and instructive on that very point. *Rodriguez* involved an off-duty police officer who drove through a red light and hit a pedestrian who later died. *Id.* at 665, 893 *A.*2d 60. Defendant did not stop; he turned off his lights and drove to a nearby garage close to his residence. *Ibid.*

Although *Rodriguez* preceded the 2007 amendment to the forfeiture statute, it applied this Court's decision in *McCann* and found as follows:

> In light of the fact that reporting to accident scenes and attending to the safety of the public are important parts of any police officer's duties, we think it plain that

defendant's off-duty behavior that resulted in his conviction of this offense sufficiently involved and touched upon his position that future disqualification was appropriate.

[*Id.* at 669, 893 *A.*2d 60.]

## II.

That backdrop invites the following related questions: Does defendant's behavior "involve[ ] or touch[ ] on his public office" or "relate[ ] directly to [his] performance" as a sheriff's officer or police officer? That can be analyzed on a number of levels. Certainly, the limited, undisputed facts from defendant's plea allocution may be considered. Defendant admitted to criminal sexual contact. He acknowledged that he touched a woman's "intimate parts, including her buttocks" without her consent, for his own sexual gratification.

In light of defendant's admissions, how could he, in his role as a sheriff's or police officer, officially respond to allegations of criminal sexual contact, domestic violence, sexual assault, or related accusations? How could he serve and enforce restraining orders in cases involving similar claims? Those acts fall squarely within the kinds of duties sheriff's officers and police officers are regularly called on to perform. Those responsibilities, in other words, relate directly and substantially to defendant's law enforcement posts.[2] In light of defendant's admissions, could anyone—supervi-

---

[2] Under the statute, police and sheriff's officers would inevitably be disqualified in more situations than some other public employees *because* of the requirements of those offices. A public works employee who maintains public grounds, or an information technology officer at a sheriff's department, would likely not be disqualified if convicted of the same offense as defendant's. That said, disqualification would not be automatic for police officers in all cases, as the majority mistakenly predicts. *See ante* at 239 n. 8, 1 *A.*3d at 651 n. 8. Conviction of a federal offense unrelated to an officer's responsibilities to enforce state and local laws, for example, would not necessarily lead to disqualification. Nor would every speeding ticket automatically lead to disqualification. *See ibid.* An officer convicted of a single instance of exceeding the speed limit, with no proof that he or she intended to violate the law, should be looked at differently than someone with a dozen speeding convictions, accumulated in only a few

sor, victim, or bystander—have confidence in his ability to carry out those tasks?

The next analytical step would be to consider facts embraced by the plea which were not expressly part of the allocution. Here, defendant admitted to touching intimate *parts* of his victim, *including* her buttocks. The statute nowhere limits a judge's review to the sanitized phrases used by a defendant to describe his criminal offense of conviction. And there is no reason to bar a fact finder from considering facts like those and others which are embraced by a plea. In this case, that includes, at the very least, consideration of *which* other "intimate part" or "parts" defendant touched. To the extent there is a material dispute, the judge should conduct an appropriate review of the facts—including the victim's account and the DNA evidence, as well as contrary evidence defendant may present—and make relevant findings after a hearing. Once that is permitted, as it should be, the case for forfeiture here becomes even more compelling.

In light of the facts in this matter, it is not necessary to go to the next level and look beyond what is embraced by the plea, or even to decide precisely which of the remaining facts fall on either side of that line. To be sure, if all of the facts in the PSR were sustained, defendant's permanent disqualification from public employment would be even harder to avoid.

The trial court considered one disputed fact in deciding that defendant's offense warranted disqualification, namely, that the victim was incapacitated. Prior to doing so, the court should have conducted a hearing and made relevant findings. The proper remedy, then, should be a remand to the trial court for it to conduct such a hearing and then apply credible facts to the test in the forfeiture statute.

---

years, where there is ample proof of intent. In other words, misconduct has to be carefully measured, in each case, against the standard set forth in the forfeiture statute.

The majority skips over that consideration and concludes that defendant's offense did not touch on his office. The majority, thus, in effect rules as a matter of law that no set of facts would warrant disqualification in this case—neither the facts defendant admitted to, nor any other relevant but disputed facts in the PSR. Those findings do not square with the broad purpose underlying the forfeiture law or the statute's directive that conduct that touches on or directly relates to one's performance in public office should lead to debarment.

## III.

Police officers perform a valuable public service, and the vast majority of them do so honorably. To be effective, they must not only enforce but also obey the law. "That duty is essential to the preservation of a free society." *State v. Stevens,* 203 *N.J.Super.* 59, 65, 495 *A.*2d 910 (Law Div.1984). Because defendant's specific behavior in this case failed to live up to that responsibility, he relinquished both of his law enforcement posts. In light of the facts about his offense, the forfeiture statute disqualifies him from other public positions as well.

For the reasons outlined above, I respectfully dissent.

*For affirmance*—Justices LONG, LaVECCHIA and WALLACE—3.

*For reversal*—Chief Justice RABNER and Justice HOENS—2.

*Not Participating*—Justices ALBIN and RIVERA–SOTO.