# RECORD IMPOUNDED

### NOT FOR PUBLICATION WITHOUT THE
### APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1416-21

IN THE MATTER OF THE
EXPUNGEMENT OF
CRIMINAL/JUVENILE
RECORDS OF F.S.[1]

_____

Submitted July 19, 2022 – Decided August 19, 2022

Before Judges Sabatino and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. 21-000147.

Camelia M. Valdes, Passaic County Prosecutor, attorney for appellant State of New Jersey (Leandra L. Cilindrello, Assistant Prosecutor, on the brief).

Katherine O'Brien Law, attorneys for respondent F.S. (Katherine N. O'Brien and Danielle M. Hughes, on the brief).

PER CURIAM

---

[1] We use initials to refer to respondent because the non-revelation of his identity as a person with a criminal record is the subject matter of his expungement application and this appeal. N.J.S.A. 2C:52-15 (prohibiting, subject to certain enumerated exceptions, the disclosure of information contained within expunged criminal and juvenile records).

The State appeals the trial court's December 15, 2021 grant of the petition of respondent F.S., a former municipal police officer, to expunge his criminal record over the State's objection.[2]  The trial court's decision hinged upon its determination that F.S.'s criminal conviction of aggravated assault in 2014 did not "touch and involve" his employment as a police officer.  See N.J.S.A. 2C:51-2(a)(1) to (3).  We disagree with that legal determination of a lack of nexus, and accordingly reverse.

In accordance with the Supreme Court's guidance in State v. Hupka, 203 N.J. 222, 239-41 (2010), we describe the record in a manner confined to facts that are either within the "four corners" of F.S.'s guilty plea allocution, or which he has admitted or are otherwise uncontested.[3]

Succinctly stated, the facts concern a confrontation between F.S. and two civilians that occurred on November 14, 2010.  At about 6:15 p.m. that evening, F.S. received a telephone call from his minor son.  The son told F.S. that he had just been attacked by two men while riding his bicycle near a drug store in the

---

[2]  The trial court's written order memorializing its December 15, 2021 oral decision was issued on December 27, 2021.

[3]  In keeping with these constraints, we do not consider the State's contention in its brief that F.S. displayed a gun at the scene of the incident.  At sentencing, the trial court granted F.S.'s request, without objection by the State, to strike the references in the presentence report indicating that a gun had been involved.

A-1416-21

town where F.S. and his family resided.  At the time he received his son's call, F.S. was a police officer employed by a nearby municipality, and was off duty. The son described the two men to F.S.

In response to the call, F.S. and his wife quickly went to their son's location and found him lying injured on the sidewalk.  According to F.S., an eyewitness who had seen the altercation told him that a White male and a Black male had ran on foot from the scene.  F.S.'s wife called the local police department and stayed with the son.  Meanwhile, as F.S. put it in his official report, he "went on foot to search for the suspects."

What happened next is the critical part of the narrative.  As F.S. recounted in his report:

> I arrived a block away and I spotted two individuals who matched the description as the suspects.  I immediately identified myself as a police officer, displayed my identification and badge from my wallet. At this time the W/M [White male] complied to [sic] my orders and immediately layed [sic] on the ground. The B/M [Black male] however did attempt to flee and had to be brought down to the ground and held until arrival of a [name of town omitted] police unit.  Once the unit arrived on scene, and took over the investigation, I responded to the [name of hospital and town omitted] where my son was transported for his injuries.
>
> [(Emphasis added).]

A-1416-21

The two men who F.S. apprehended were arrested. The Black male told investigators in a sworn statement that F.S. had struck him at the scene repeatedly with his fist, injuring him.

Thereafter, the State criminally charged F.S. with second-degree official misconduct, N.J.S.A. 2C:30-2(a) (count one); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (alleging serious bodily injury) (count two); and third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7) (alleging significant bodily injury) (count three).

Plea negotiations ensued and F.S. agreed to plead guilty to the third count of the indictment, third-degree aggravated assault. The other counts were dismissed. As part of the plea agreement, F.S. agreed to resign from his employment as a police officer. However, the plea agreement did not contain an agreement by F.S. to forfeit any future employment in a law enforcement position. The State agreed to recommend a probationary sentence.

At the plea proceeding, F.S. acknowledged during his colloquy that he had mistakenly believed that the Black male had assaulted his son. F.S. further admitted that he had struck the Black male "with [his] fist about [the victim's] face and head area." F.S. further admitted that as a result of his actions, he had inflicted "significant bodily injury" upon the victim.

4

Consistent with the terms of the plea agreement, the trial court sentenced F.S. in August 2014 to a probationary term of eighteen months. It is undisputed that F.S. completed his probationary sentence, and, as agreed, voluntarily resigned from the police force.

In February 2021, F.S. filed a petition in the Criminal Part seeking the expungement of his criminal records pursuant to N.J.S.A. 2C:52-7. The State objected to the expungement application. It argued that F.S.'s aggravated assault upon the victim, under the circumstances presented, amounted to a criminal act that "touched and concerned" his occupation as a police officer, thereby making it ineligible for expungement under N.J.S.A. 2C:52-2(b).

After hearing oral argument, the trial court granted F.S.'s petition on December 15, 2021. In its oral ruling, the court concluded that the aggravated assault did not touch or concern F.S.'s employment as a police officer. As the events were construed by the trial court, F.S. "took off in pursuit . . . as a father concerned about the well-being of his child."

The court acknowledged that F.S. admittedly had identified himself as a police officer, but did so "in order to be able to hold the two individuals whom he mistakenly took to be the offenders against his son." The court noted that F.S. did not go to the scene armed or with handcuffs. It construed the events as

F.S. "in effect engaging in a citizen's arrest." The court found that F.S. showed his police badge in order "to persuade them [the two suspects] to stay," and that "there wasn't any more formality to it . . . [.]"

The State now appeals the expungement of F.S.'s conviction, contending the trial court erred in concluding that the conviction did not touch and concern his employment as a police officer. Applying de novo review to that legal conclusion, Hupka, 203 N.J. at 231, we concur with the State's position and reverse.

The key statutory provision here, N.J.S.A. 2C:52-2(b), prohibits expungement of a conviction for "any crime committed by a person holding any public office, position or employment . . . if the crime involved or touched such office, position or employment." (emphasis added). A related provision within N.J.S.A. 2C:51-2(d) under the forfeiture statutes forever disqualifies a public official from "holding any office or position of honor, trust or profit" within government if that person has been convicted of an offense "involving or touching on his public office[.]" N.J.S.A. 2C:51-2(d). As used in that related provision in Title 51, the term "involving or touching upon his public office, position or employment" means "the offense was related directly to the person's

performance in, or circumstances flowing from, the specific public office, position or employment held by the person." Ibid.

This "touch or involve" concept has been developed in case law. For example, in McCann v. Clerk of Jersey City, 167 N.J. 311, 320-24 (2001), our Supreme Court held that a former mayor's guilty plea to federal mail, wire, and tax fraud violations occurring in the interim between his terms of office did not sufficiently touch or involve his public duties to justify a permanent forfeiture disqualifying him from public office. The Court noted the phrase in the statute implies "a determination on the part of the Legislature to limit the scope of the disqualification provision to crimes that are related directly to an individual's performance in, or circumstances flowing from, a specific public office or position held by that individual." Id. at 321.

Later, in Hupka, 203 N.J. at 222, a 5-2 majority of the justices concluded that a sheriff's officer who pled guilty to fourth-degree criminal sexual conduct had not been convicted of an offense touching or involving his public employment. Among other things, the majority noted that the officer "did not use his office or its trappings in any way in the commission of the [sexual] offense." Id. at 243.

A-1416-21

The present circumstances are plainly different from McCann and Hupka. Here, F.S. invoked his authority as a police officer, albeit one who was off duty, to force the victim and his companion to fall to the ground and not move. Notably, in his official report F.S. described his commands at the scene as "orders." He displayed his police badge as a clear show of official authority, to induce the two men he had apprehended to comply with those orders. He described the men as "suspects," and he referred to the local police who arrived as officers who "took over" the "investigation" he had started.

With all due respect to the trial court, the course of conduct engaged in by F.S. did "touch or involve" his occupation as a police officer because his apprehension of the two men bears a "direct relationship" to his position as a police officer. See N.J.S.A. 40A:14-200 (defining a "law enforcement officer" as one who is "statutorily empowered to act for the detection, investigation, arrest, . . . detention[] . . . of persons violating the criminal laws of this State and statutorily required to successfully complete [an approved] training course . . . .").

F.S.'s response and show of authority exceeded that of an ordinary citizen or a concerned parent. See, e.g., State v. Williams, 355 N.J. Super. 579, 589-90 (App. Div. 2002) (ordering forfeiture and disqualification for conduct involving

or touching public employment where an off-duty officer flashed his badge and fired a weapon during a bout of road rage); State v. Gismondi, 353 N.J. Super. 178, 186-89 (App. Div. 2002) (finding that an officer's flashing of his badge and firing of his service revolver during a period of off-duty drunkenness constituted an abuse of authority that involved or touched his employment). F.S.'s actions were that of a police officer, even without a finding that he displayed or fired his service revolver. The statutory disqualification logically is not limited to circumstances involving a police officer's use of a weapon.

Because the trial court erred in its legal analysis and its application of the statutes, we reverse the order granting expungement.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9                                                                          A-1416-21